753 So.2d 1278 (2000)
TALAT ENTERPRISES, INC., d/b/a Billy the Kid's Buffet, Appellant,
v.
AETNA CASUALTY AND SURETY CO., d/b/a Aetna Life and Casualty, Appellee.
No. SC 93287.
Supreme Court of Florida.
March 2, 2000.
*1279 William F. Merlin, Jr. of Merlin Law Group, Inc., Tampa, Florida, for Appellant.
Philip E. Beck of Smith, Currie & Hancock LLP, Atlanta, Georgia, for Appellee.
Jeffrey M. Liggio, West Palm Beach, Florida, and P. Scott Russell, IV, of Dunlap & Russell, P.A., Jacksonville, Florida, for Academy of Florida Trial Lawyers, Amicus Curiae.
Anthony J. Russo of Butler, Burnette & Pappas, Tampa, Florida, for Nationwide Mutual Fire Insurance Company and United Services Automobile Association, Amicus Curiae.
WELLS, J.
We have for consideration Talat Enterprises, Inc. v. Aetna Casualty & Surety Co., No. 97-2327 (11th Cir. June 23, 1998) (unpublished opinion), a case in which the United States Court of Appeals for the Eleventh Circuit certified a question of Florida law to this Court. We have jurisdiction pursuant to article V, section 3(b)(6) of the Florida Constitution.

I. Background
This case stems from an April 15, 1994, fire which caused substantial damage to Billy the Kid's Buffet, a restaurant owned by Talat Enterprises, Inc. (Talat) and insured by Aetna Casualty and Surety Company (Aetna). The federal magistrate below set forth the relevant facts:
There is no genuine issue as to any material fact. On April 15, 1994, there was a fire at Billy the Kid's Buffet, a restaurant owned by Talat. After repairs, the restaurant reopened for dinner on either April 19, 1994 or April 20, 1994. At the same time, Aetna paid Talat $10,000. On April 27, 1994, the Department of Health shut down the restaurant for about thirteen days for code violations. On June 9, 1994, Talat demanded an appraisal, and appointed Ron Livingstone & Associates as its *1280 public adjuster. On July 29, 1994, Livingstone submitted Talat's proof of loss for $141,704 for damage to personal property. On August 10, 1994, Livingstone submitted Talat's proof of loss for $291,111 for loss of business income.
On September 7, 1994, Talat filed for bankruptcy under Chapter 11 [Case No. 94-4638-BKC-6B1]. On October 21, 1994, Talat sued Aetna in Bankruptcy Court for business property and income loss, but did not join Talat's bad faith claim. See Fed.R.Civ.P. 18(a). On December 29, 1994, the Bankruptcy Court granted a motion to dismiss Talat's breach of contract suit, and required arbitration pursuant to the arbitration clause in the appraisal provision.
On February 3, 1995, the arbitrators returned an appraisal award in favor of Talat for $331,930.47$119,007.47 for personal property and $212,923.00 for business interruption loss. On or about March 3, 1995, Aetna paid Talat $331,930.47the total value of the appraisal award. On March 15, 1995, Talat issued statutory notification of intent to pursue a bad faith claim against Aetna pursuant to § Fla. Stat. Ann. 624.155. Sixty days after Talat's filing of the notice of its bad faith claim is May 16, 1995. No action lies if the "damages are paid" or "the circumstances giving rise to the violation are corrected" by May 16, 1995. See § Fla. Stat. § 624.155(2)(d). On May 23, 1995, Talat filed suit in state court for breach of a covenant of good faith and fair dealing to promptly negotiate and settle Talat's claim. On July 24, 1995, Aetna removed the state action to the district court. On July 27, 1995, Talat converted its Chapter 11 bankruptcy case into a Chapter 7 liquidation.
Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co., 952 F.Supp. 773, 777-78 (M.D.Fla.1996) (footnotes omitted).
After removing the case to federal court, Aetna moved for summary judgment, arguing it was entitled to judgment as a matter of law under section 624.155(2)(d), Florida Statutes (1993),[1] because it paid the underlying contract damages within the sixty days from the date that Talat filed its bad-faith notice. Talat countered that Aetna was required to pay not only the damages owed under the insurance policy but also all extra-contractual damages flowing from Aetna's alleged failure to make a good-faith attempt to settle Talat's claim.
The court granted Aetna's motion for summary judgment, ruling that Aetna "has timely paid `the damages' and has corrected `the circumstances giving rise to the violation'" within the meaning of section 624.155(2)(d). Id. at 778. The court reasoned that Aetna satisfied the dictates of section 624.155(2)(d), Florida Statutes (1993), by paying Talat's contractual damages, i.e., the amount awarded in arbitration, before the expiration of the sixty-day period. Id. The court rejected Talat's reading of the statute as requiring the insurer to pay whatever the insured demands as expansive and illogical. Id.
On appeal, the circuit court, finding no controlling precedent from this Court, certified the following question of state law:
If an insured suffered extra-contractual damages prior to giving its insurer written notice of a bad faith violation and the insurer paid all contractual damages, but none of the extra-contractual damages, within sixty days after the written notice was filed, has the insurer paid "the damages" or corrected "the circumstances giving rise to the violation," as those terms are contemplated by Florida Statute § 624.155(2)(d), thereby precluding the insured's first-party bad faith action to recover the extra-contractual damages?
*1281 Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co., No. 97-2327, slip op. at 4 (11th Cir. June 23, 1998) (unpublished opinion). We granted jurisdiction, see Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co., 728 So.2d 205 (Fla.1998), and based on the following analysis, answer this question in the affirmative.

II. Discussion
This case concerns a first-party action by an insured against its insurer for damages caused by the insurer's alleged bad faith in settling a fire-damage claim made under a commercial property insurance policy. Although the Florida common law recognized third-party bad-faith claims, see Auto Mut. Indem. Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938), it did not recognize claims made by an insured against its own insurer for failing to act in good faith when settling a claim. See Baxter v. Royal Indem. Co., 285 So.2d 652 (Fla. 1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975). If an insurer acted in bad faith in settling a claim filed by its insured, the only remedy available to the insured, in the absence of an independent tort committed by the insurer such as fraud, was to file a breach of contract claim against its insurer and recover only those damages contemplated by the parties to the policy. See id. at 657.
In 1982, the Legislature adopted section 624.155, Florida Statutes (1993), the civil remedy statute of the Florida Insurance Code, which authorized, among other things, first-party bad-faith actions, see McLeod v. Continental Ins. Co., 591 So.2d 621, 623 (Fla.1992); Opperman v. Nationwide Mut. Fire Ins. Co., 515 So.2d 263, 266 (Fla. 5th DCA 1987), review denied, 523 So.2d 578 (Fla.1988), and authorized the first-party insured to recover more than breach of contract damages. See Time Ins. Co., Inc. v. Burger, 712 So.2d 389, 392 (Fla.1998) (section 624.155(1)(b)1 authorizes recovery of damages for emotional distress in first-party bad-faith claim against health insurance company).
Talat filed this action against Aetna under section 624.155(1)(b)1, Florida Statutes (1993), which provides a cause of action against an insurer by any person damaged as a result of that insurer "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests." Section 624.155(2)(d), Florida Statutes (1993), provides as a precedent to the filing of a claim for this cause of action in court that "[n]o action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected."
Aetna argues that this provision is a cure period during which an insurer may avoid bad-faith litigation by paying the contractual damages owed within the sixty-day window. Thus, Aetna reasons that, because it paid the arbitration award before Talat even filed its bad-faith notice, it has paid the damages or corrected the circumstances giving rise to the violation, thereby precluding the instant action. Talat, on the other hand, argues that this provision is a confession period during which an insurer must pay all the extra-contractual damages caused by the alleged bad faith to avoid an action under this statute. Talat contends that Aetna's interpretation of the statute turns what was intended to be a consumer protection law into an amnesty program for bad-faith insurers.
We find United States Magistrate Judge Glazebrook's analysis of this issue to be correct. In granting Aetna's motion for summary judgment, Judge Glazebrook stated:
Aetna has timely paid "the damages" and has corrected "the circumstances giving rise to the violation" within the meaning of Fla. Stat. Ann. § 624.155(2)(d). As a matter of law, therefore, "no action shall lie" for not attempting in good faith to settle claims. First, Talat's cause of action for bad *1282 faith did not arise until February 3, 1995 when the arbitrators returned an appraisal award in favor of Talat for $331,930.47. Although § 624.155(2)(d) gave Aetna until May 16, 1995-sixty days after the filing of the statutory notice of the bad faith claim-to pay the damages or to otherwise correct the circumstances, Aetna paid Talat the full award on or about March 3, 1995.
The Court rejects as unsupported Talat's contention that the insurer must not only pay the claim within the sixty-day window, but must also pay all compensatory damages that flow from any delay in settling the claim. Section 624.155 does not impose on an insurer the obligation to pay whatever the insured demands.[Note 6] The sixty-day window is designed to be a cure period that will encourage payment of the underlying claim, and avoid unnecessary bad faith litigation. Surely an insurer need not immediately pay 100% of the damages claimed to flow from bad faith conduct in order to avoid the chance that the insured will succeed on a bad faith cause of action. If the insurer may avoid a bad faith action only by paying in advance every penny of the damages that it faces if it loses at trial, the insurer would have no reason to pay. Furthermore, few insureds would restrict their demands to compensatory damages. There is no reason why insureds would not demand also the advance payment of punitive damages and attorney's fees. Section 624.155(2)(d) would have no effect or purpose under such an interpretation. The law does not support such an expansive and illogical reading of Fla. Stat. Ann. § 624.155(2)(d).
Aetna's interpretation is sound. To cure an alleged violation and to avoid a civil action, an insurer must pay the claim (sometimes in excess of policy limits in the third-party context) before the sixty days expire. Aetna has done so, and Fla. Stat. Ann. § 624.155(2)(d) states that no action lies. Aetna is entitled to judgment as a matter of law.
[Note 6]. Although an insurer may have a good reason for not wanting to settle within the sixty-day period "for the amount demanded" in order to avoid a bad faith suit, the insurer nevertheless must respond within sixty days. Imhof v. Nationwide Mutual Ins. Co., 643 So.2d 617, 619 (Fla.1994). Aetna has done far more than just respond. It has paid the full claim of $331,930.47, which included business interruption insurance for delays in repairs. Talat is not entitled to a double recovery.
Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co., 952 F.Supp. 773, 778 (M.D.Fla. 1996).
The majority of cases that have examined the civil remedy statute support Judge Glazebrook's analysis. See Rodante v. Fidelity Nat. Ins. Co., 725 So.2d 1151 (Fla. 2d DCA 1998); Clauss v. Fortune Insurance Co., 523 So.2d 1177 (Fla. 5th DCA 1988). Judge Glazebrook's construction of section 624.155(2)(d), Florida Statutes (1993), also comports with the statutory scheme of section 624.155, Florida Statute (1993), when that statute is read as a whole.
A proper construction of section 624.155(2)(d), Florida Statutes (1993), must take into account the entire civil remedy statute and place it in historical context. See Deal v. United States, 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993); T.R. v. State, 677 So.2d 270, 271 (Fla.1996). At the time of its adoption in 1982, section 624.155(1)(a), Florida Statutes (Supp.1982), provided a civil remedy for any person damaged by an insurer's violation of any of the following provisions:
1. Section 626.9541(9), (15), or (24);
2. Section 626.9551;
3. Section 626.9705;
4. Section 626.9706; or
5. Section 626.9707;....
Further, the statute provided a civil remedy for any person damaged by an insurer's commission of any of the following:
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done *1283 so, had it acted fairly and honestly toward its insured and with due regard for his interests;
2. Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or
3. Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage....
§ 624.155(1)(b), Fla. Stat. (Supp.1982).
As we earlier noted, the civil remedy provided in subdivision (1)(b)1 was not in existence for first-party insureds before the adoption of the civil remedy statute. See Baxter, 285 So.2d 652. Because this statute is in derogation of the common law, it must be strictly construed. See Time Ins. Co., 712 So.2d at 393.
We find that the requirements of written notice to the Department of Insurance and the insurer are conditions precedent to bringing an action under subdivision (1)(a) or (b). Subdivision (2)(d) provides that "[n]o action shall lie if, within 60 days thereafter, the damages are paid or the circumstances giving rise to the violation are corrected." When one reads the civil remedy statute in context and with the understanding that it is in derogation of the common law, it is plain that the Legislature intended the notice to the Department to serve as a basis for the Department to assist in the settling of claims and to monitor the insurance industry. It also is plain that the sixty-day period was a time in which the insurer could act to "cure" a violation of subdivision (1)(a) or (b) about which it had been served notice.
It naturally follows that for there to be a "cure," what had to be "cured" is the nonpayment of the contractual amount due the insured. In the context of a first-party insurance claim, the contractual amount due the insured is the amount owed pursuant to the express terms and conditions of the policy after all of the conditions precedent of the insurance policy in respect to payment are fulfilled. Section 624.155(1)(b), Florida Statutes (1993), then, is correctly read to authorize a civil remedy for extra contractual damages if a first-party insurer does not pay the contractual amount due the insured after all the policy conditions have been fulfilled within sixty days after a valid notice has been filed under section 624.155(2)(a), Florida Statutes (1993).
The Legislature was less than precise in its use of the word "damages" for multiple purposes throughout the legislative scheme. However, section 624.155(2)(d), Florida Statutes (1993), cannot reasonably be construed to require payment of extra-contractual damages to avoid bad-faith litigation until the conditions for payment under the policy have been fulfilled and the insurer has failed to cure within the sixty-day statutory period for cure after notice is filed in accord with the statute.[2]
Finally, it must be recognized that what section 624.155, Florida Statutes (1993), creates is a statutory "civil remedy." For Talat there is no remedy without the statute. Pursuant to the statute, there is no remedy until the notice is sent by the *1284 insured and the insurer has the opportunity to "cure" the violation. If the insurer pays the damages during the cure period, then there is no remedy. For this to comport with logic and common sense, this has to mean that extra-contractual damages that can be recovered solely by reason of this civil remedy statute cannot be recovered when the remedy itself does not ripen if the insurer pays what is owed on the insurance policy during the cure period. The statutory cause of action for extra-contractual damages simply never comes into existence until expiration of the sixty-day window without the payment of the damages owed under the contract. We find that in creating this statutory remedy for bad-faith actions, the Legislature provided this sixty-day window as a last opportunity for insurers to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed.

III. Conclusion
Accordingly, we answer the certified question in the affirmative and return the record to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
QUINCE, J., concurs in result only.
NOTES
[1] Section 624.155(2)(d), Florida Statutes (1993), states that "[n]o action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected."
[2] We do point out that in Vest v. Travelers Insurance Co., 753 So.2d 1270, 1275 (Fla. 2000), we clarified our decision in Blanchard v. State Farm Mutual Automobile Insurance Co., 575 So.2d 1289 (Fla.1991). In Vest, we state:

Second, we expressly state that Blanchard is properly read to mean that the "determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the [insured's] damages" are elements of a cause of action for bad faith. Once those elements exist, there is no impediment as a matter of law to a recovery of damages for violation of section 624,155(1)(b)1 dating from the date of the violation.