**Joan Marn FRANKLIN, Plaintiff,**

v.

**MINNESOTA MUTUAL LIFE INSURANCE COMPANY, n/k/a Minnesota Life Insurance Company, Defendant.**

**No. 991500CIV.**

United States District Court,
S.D. Florida.

May 19, 2000.

---

Brenton Neil Ver Ploeg, Miami, FL, for plaintiff.

Julie Mae Mihelich, Kristina Beth Pett, Jay S. Blumenkopf, Boca Ratoin, FL, for defendant.

## *ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS*

GOLD, District Judge.

THIS CAUSE is before the court upon Defendant's Motion to Dismiss [D.E. 9]. The defendant seeks to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that the plaintiff has failed to state a claim upon which relief can be granted. In essence, the defendant contends that it

paid all contractual damages within 60 days of plaintiff's filing of notice, thus satisfying Florida Statute § 624.155(2)(d) and curing the alleged violation. In addition to defendant's motion to dismiss, plaintiff's response, and defendant's reply, the parties filed memoranda addressing the applicability of the Florida Supreme Court's recent decision in *Talat Enterprises, Inc. v. Aetna Casualty & Surety Co.*, 753 So.2d 1278, 2000 WL 232303 (Fla. March 2, 2000).

Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1332, diversity jurisdiction. After careful consideration of the arguments of the parties, a review of the record and applicable case law, and being otherwise informed in the matter, the court concludes that defendant's motion to dismiss should be granted.

## I. Factual Background

For purposes of this order, the facts and inferences raised in the Complaint are assumed to be true and are viewed in the light most favorable to the plaintiffs. Those facts are set forth as follows.

In September 1995, plaintiff was issued a disability income policy from defendant which obligated defendant to provide disability insurance benefits in the event that an insured became injured or disabled (¶ 8, 9).[1] On or about June 4, 1988, while the policy was in full force and effect, plaintiff was injured in a boating accident, and as a result became permanently disabled (¶ 11).

After the accident, plaintiff filed a disability claim under the Policy (¶ 12). Defendant acknowledged that plaintiff was disabled under the terms of the Policy and commenced payment of disability insurance benefits in October, 1998 (¶ 13). In November 1990, defendant ceased paying monthly disability benefits (¶ 14). Plaintiff objected, and after reviewing the medical reports, defendant resumed payments of disability insurance benefits (¶ 16).

---

1. All references to (¶) are to the Complaint unless otherwise specified.

Subsequently, in January 1997, defendant required plaintiff to submit to additional medical examinations (¶ 17). Defendant scheduled the examination with Lazaro Guerra, M.D., and provided the doctor with information concerning the Policy's definition of total disability (¶ 18). Plaintiff appeared at Dr. Guerra's office as scheduled, but was only interviewed by a physician's assistant (¶ 19). Dr. Guerra nevertheless issued a medical report stating that plaintiff could return to work for four hours per day (*Id.*).

On July 31, 1997, defendant informed plaintiff that it was denying plaintiff's claim for future disability benefits (¶ 20). After plaintiff objected, defendant referred her to a second physician, who also concluded that plaintiff was able to perform part-time work for four hours per day (¶ 21).

A lawsuit was filed on plaintiff's behalf on November 19, 1997 (¶ 23). On May 4, 1988, plaintiff filed a Civil Remedy Notice of Insurer Violation, pursuant to Fla.Stat. § 624.155, putting defendant on notice of its violations in failing to promptly and properly evaluate and settle plaintiff's claim (¶ 25). On July 2, 1998, 59 days into the statutory 60 day window afforded to insurers, defendant placed plaintiff back on claim, issued a payment covering the period of non-payment, paid interest at the statutory rate, refunded premiums plaintiff paid during that time, and announced its willingness to pay a reasonable attorney's fee to plaintiff's counsel (¶ 26). On August 2, 1998, the United States District Court for the Southern District of Florida issued a Final Order of Dismissal With Prejudice in the contract action (¶ 28). Plaintiff in this suit seeks damages for statutory bad faith, alleging that defendant remains in violation of Fla.Stat. § 624.155 despite payment of its contractual obligations within the 60 day statutory window.

## II. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that dismissal of a claim is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). On a motion to dismiss, the Court must accept as true all facts alleged and draw all inferences therefrom in the light most favorable to the non-moving party. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). Rule 12(b)(6) is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and the attachments thereto. *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir.1997). Moreover, a complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *M/V Sea Lion v. v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994) (citation omitted).

## III. Discussion and Analysis

Plaintiff has filed a bad faith claim against her insurer under Florida Statute § 624.155. The statute provides a civil cause of action against an insurer when a person is damaged by the insurer's violation of any of the statutory provisions enumerated under § 624.155(1)(a), including the unfair claim settlement practices set forth in § 626.9541(1)(i), or by the commission by the insurer of any of the acts enumerated under § 624.155(1)(b), including "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so." However, as a condition precedent to bringing such an action under § 624.155, the department and the insurer must be given 60 days written notice of the violation. Fla.

Stat. § 624.155(2)(a). No action will lie if, within those 60 days, "the damages are paid or the circumstances giving rise to the violation are corrected." · Fla.Stat. § 624.155(2)(d).

On December 14, 1999, this court withheld a ruling upon the motion to dismiss pending the Florida Supreme Court's ruling on the following certified question from the Eleventh Circuit:

> If an insured suffered extra-contractual damages prior to giving its insurer written notice of bad faith violation and the insurer paid all contractual damages, but none of the extra-contractual damages, within sixty days after the written notice was filed, has the insurer paid "the damages" or corrected "the circumstances giving rise to the violation," as those terms are contemplated by Florida Statute § 624.155(2)(d), thereby precluding the insured's first-party bad faith action to recover the extra-contractual damages?

*Talat Enterprises, Inc. v. Aetna Casualty & Surety Co.,* No. 97–2327 (11th Cir. June 23, 1998). On March 2, 2000, the Florida Supreme Court answered the certified question in the affirmative, finding that "in creating this statutory remedy for bad-faith actions, the Legislature provided this sixty day window as a last opportunity for insurers to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed." *Talat Enterprises, Inc. v. Aetna Casualty & Surety Co.,* 753 So.2d 1278, 1284 (Fla.2000).

Plaintiff has averred in the complaint, and does not dispute, the fact that defendant fully paid the contractual damages sought in this case within the 60 day window. However, plaintiff argues that her claim is not precluded by the Florida Supreme Court's decision in *Talat* because the Complaint focuses on the mechanisms by which defendant chooses to deny benefits to its disabled insureds. According to plaintiff, *Talat* left intact the decision by the Third District Court of Appeal of Florida in *Paz v. Fidelity National Ins. Co.,* 712 So.2d 807 (Fla. 3d DCA 1998), and, under *Paz,* this court should find that plaintiff has stated a claim upon which relief can be granted.

After a thorough review of plaintiff's arguments and the applicable case law, this court finds that this case is indeed controlled by the Florida Supreme Court's decision in *Talat,* that *Paz* is distinguishable and does not control the present case, and that plaintiff has failed to state a claim upon which relief can be granted.

## 1. Applicability of *Talat*

■ Plaintiff argues that the Florida Supreme Court clearly limits its decision to actions brought under Fla.Stat. § 624.155(1)(b), and that, because plaintiff has alleged a cause of action under § 624.155(1)(a) for a violation of § 626.9541(1)(i); *Talat* is inapplicable. This court disagrees.

Plaintiff is correct in asserting that *Talat* involved a claim by an insured under Fla.Stat. § 624.155(1)(b)(1) that the insured was damaged as a result of the insured not attempting in good faith to settle the claim. *Talat,* 753 So.2d 1278, 1280. The significance for this case lies in the Florida Supreme Court's interpretation of Fla.Stat. § 624.155(2)(d),[2] which provides a cure period during which an insurer can avoid bad-faith litigation.

The Florida Supreme Court noted in *Talat* that Fla.Stat. § 624.155 must be read as a whole. *Talat,* 753 So.2d 1278, 1282. Furthermore, the statute must be strictly construed. *Id.* at 1283. In doing its analysis, the Court found that written notice to the Department of Insurance and the insurer serves as a condition precedent under both subdivision 1(a) and (b), and

---

**2.** Fla.Stat. § 624.155(2)(d), in its entirety, states: "No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected."

then applied subdivision 2(d) to find that "the sixty-day period was a time in which the insurer could act to 'cure' a violation of subdivision (1)(a) or (b) about which it had been served notice." *Id.* The 'cure' in the context of first-party insurance claims, such as this one, may be payment of "the contractual amount due the insured," which is calculated as the amount owed pursuant to the express terms and conditions of the policy after all the conditions precedent of the insurance policy in respect to payment are fulfilled. *Id.*

Limiting the *Talat* decision to claims brought under § 624.155(1)(b), and excluding claims brought under § 624.155(1)(a), would subvert the legislative intent of the statute and elevate form over substance. As the Florida Supreme Court stated in *Talat*, Fla.Stat. § 624.155 creates a statutory civil remedy which does not come into effect until notice is sent by the insured and the insurer has the opportunity to cure the violation. *Talat*, 753 So.2d 1278, 1283. "If the insurer pays the damages during the cure period, then there is no remedy. For this to comport with logic and common sense, this has to mean that extra-contractual damages that can be recovered solely by reason of this civil remedy statute cannot be recovered when the remedy itself does not ripen if the insurer pays what is owed on the insurance policy during the cure period." *Id.* The legislature plainly wrote that an insurer could avoid a bad faith suit by either paying the damages **or** correcting the circumstances giving rise to the violation. Those curative methods are not limited to any particular cause of action under the statute, and to write in such a limitation would not comport with the requirements of strict construction. Indeed, such a limitation would render the first clause of § 624.155(2)(d) meaningless when actions are brought under § 624.155(1)(a), and permit plaintiffs to subvert the legislatively provided last opportunity to insurers by simply alleging that the failure to settle in good faith was due to improper underlying settlement procedures. This court finds that this is not the intended construction of the statute.

## 2. Applicability of *Paz*

Plaintiff argues that the instant case is controlled by *Paz v. Fidelity National Ins. Co.*, 712 So.2d 807 (Fla. 3d DCA 1998), which it claims is unmentioned and unimpeded by *Talat.* This court disagrees.

*Paz* involved a first-party bad faith action in which the insured alleged that the insurer violated § 624.155(1)(b)(1) by failing to act fairly and honestly to settle the claim and that the insurer routinely demands mediation and arbitration to avoid payment. The Third District Court of Florida, in reversing a grant of summary judgment, found that the insurer had not paid damages within 60 days of the filing of the civil remedy notice, and that, in addition, there were genuine issues of material fact as to whether the insured did routinely order mediation and arbitration to delay payments. *Paz*, 712 So.2d at 809. The *Paz* court interpreted § 624.155(2)(d) to "provide[ ] that if damages are due, they must be paid within 60 days for no civil action to lie, or if some other circumstances exist giving rise to the violation, they must be corrected within 60 days for no civil action remedy to lie." *Id.*

The *Paz* case, based on its facts, is distinguishable from the instant case. In *Paz*, the insurer failed to pay damages within the 60 day statutory cure period, whereas there is no dispute that the insurer in the instant case had paid the contractual damages within 60 days of receiving notice of the bad faith suit. Upon the finding that the insurer had not paid, it was then necessary for the *Paz* court to determine whether the other clause of § 624.155(2)(d), permitting the insurer to cure by correcting the circumstances giving rise to the violation, had been satisfied.

This court rejects plaintiff's argument that the *Paz* case stands for the proposition that an action may lie even if the insurer pays contractual damages within

60 days because the underlying circumstances giving rise to the violation would still not be corrected. To ascribe such a meaning to the statute would require reading the "or" in § 624.155(2)(d) as an "and," and in inserting qualifying language that was not included by the legislature. To the extent that the *Paz* court may have taken this approach, this court finds it to be in error. Furthermore, *Paz* has not been cited by any other Florida courts, and its approach was implicitly contradicted by the *Talat* decision.

### 3. Damages

In addition, the Complaint is also deficient in that it lacks any allegation that plaintiff suffered any damages as a result of defendant's alleged bad faith denial of her claim. It is set forth in the Complaint that within sixty days of receiving notice of the bad faith action, defendant restarted plaintiff's benefits, paid the entire amount of unpaid benefits, paid interest at the statutory rate, refunded premiums paid by plaintiff while she was taken off claim and agreed to pay plaintiff's attorneys' fees. It is not necessary that extra-contractual damages be paid by an insurer to avoid bad-faith litigation under § 624.155(2)(d). *Talat*, 753 So.2d 1278, 1283. The absence of an allegation of damage suffered by the plaintiff provides further justification for the dismissal of this case.

### IV. Conclusion

There is no dispute in this case that defendant paid the full contractual damage amount to plaintiff within sixty days of receiving notice of plaintiff's bad faith action. Under the Florida Supreme Court's decision in *Talat*, this payment serves as a cure and warrants dismissal of plaintiff's suit under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [D.E. 9] is GRANTED. It is further

**ORDERED AND ADJUDGED** that all pending motions are DENIED AS MOOT and Clerk of Court is directed to CLOSE this case.