IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

APEX ROOFING AND RESTORATION,
LLC A/A/O JAMES DERRICK,

      Appellant,

  v.

                              Case No. 5D21-1919
                              LT Case No. 2020-CC-001461-O

STATE FARM FLORIDA INSURANCE
COMPANY,

      Appellee.
_____/

Opinion filed July 1, 2022

Appeal from the County Court
for Orange County,
Tina Caraballo, Judge.

Ramil A. Kaminsky and Nicola Mitry,
of RAK LAW, PLLC, Lakeland, and
Gray R. Proctor, Madison, NJ, for
Appellant.

Paul L. Nettleton and Jeffrey A.
Cohen, of Carlton Fields, Miami, for
Appellee.

LAMBERT, C.J.

      Apex Roofing and Restoration, LLC, ("Apex"), timely appeals the final

judgment entered against it and in favor of State Farm Florida Insurance

Company ("State Farm") on Apex's first-party bad faith action. The judgment incorporated an earlier order in which the court granted summary judgment on two of the grounds that were asserted by State Farm in its summary judgment motion. Accordingly, our focus here is whether Apex has shown that the trial court committed reversible error in entering judgment on the two grounds ruled on by the trial court. *See Sierra by Sierra v. Pub. Health Tr. of Dade Cnty.*, 661 So. 2d 1296, 1298 (Fla. 3d DCA 1995) ("An appellate court is reactive . . . . Appellate courts may not decide issues that were not ruled on by a trial court in the first instance."). For the following reasons, we reverse the final judgment.

By way of background, James Derrick was a named insured under the State Farm homeowner's insurance policy at issue. While the policy was in effect, the roof on Derrick's home was damaged by "wind, hail, and/or storm." Derrick reported this loss to State Farm, and State Farm opened a claim related to the loss. Shortly thereafter, Derrick hired Apex to repair the damage to his roof. Derrick also executed an assignment of benefits document in which he assigned to Apex the right to collect all post-loss insurance proceeds under the policy related to its services.

State Farm inspected the damage to the roof and premises. It then prepared an estimate and, after first accounting for the deductible on the

2

policy and depreciation to the roof, issued a check for the loss. Prior to any repair work being done, Derrick supplemented his claim to include additional damage to the interior of the property. State Farm reinspected the premises and tendered a second payment.

Apex then emailed State Farm an estimate for a roof replacement, the net cost of which exceeded the total sums that State Farm had previously tendered. Shortly thereafter, and, specifically, on April 22, 2019, Apex filed with the Department of Financial Services ("DFS") a document commonly known as a Civil Remedy Notice ("CRN"), alleging, in various ways, how, in its view, State Farm had failed to act in good faith in its handling of this claim, in violation of sections 624.155 and 626.9541, Florida Statutes (2018).

Section 624.155 is titled "Civil Remedy." Pertinent here, it provides that any person may bring a civil action against an insurer if the person is damaged by the insurer "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." However, as a condition precedent to bringing what is sometimes referred to as a bad faith action, section 624.155(3)(a) requires that the DFS and the insurer be given sixty days' written notice of the violation. Consequently, once the CRN is filed, then, during this sixty-day "cure" period,

3

if the damages are paid or the circumstances giving rise to the violation are corrected, "[n]o [bad faith] action shall lie." § 624.155(3)(d), Fla. Stat. (2018).

The sixty-day cure period in this case thus began on April 22, 2019, when Apex filed its CRN. State Farm made no additional payment to Apex or, for that matter, Derrick, during this period. Instead, on May 20, 2019, State Farm invoked the appraisal provision of the insurance policy at issue. This contractual provision provides that if the parties have been unable to agree on the amount of the loss, either may elect to have the amount of the loss determined by appraisal.

The appraisal process initiated by State Farm was concluded in September 2019 when the appraisers filed their appraisal award. The award exceeded the aggregate sums that State Farm had previously paid on the claim. Within a matter of days, State Farm paid this difference.

Apex then filed a one-count complaint under section 624.155 seeking damages against State Farm for its alleged bad faith handling of the claim. State Farm responded to the complaint with a combined motion to dismiss or for summary judgment. While State Farm raised several grounds in its motion, as previously indicated, the trial court granted it summary judgment on two distinct grounds or bases, which we now address. Our standard of review is de novo. *See Landers v. State Farm Fla. Ins.*, 234 So. 3d 856, 858

4

(Fla. 5th DCA 2018) (citing *Volusia Cnty. v. Aberdeen at Ormond Beach*, 760 So. 2d 126, 130 (Fla. 2000)).

The trial court first found that the sixty-day cure period under section 624.155(3)(d), which began to run on April 22, 2019, when Apex filed its CRN, was "necessarily" tolled once State Farm invoked the appraisal provision so as "to allow the appraisal to conclude." Then, citing to *Talat Enterprises, Inc. v. Aetna Casualty & Surety Co.*, 753 So. 2d 1278 (Fla. 2000), the trial court found that State Farm's timely payment of the net appraisal award "cure[d] any [claim of] bad faith." Thus, the precise question for us to resolve on this first ground is whether the invocation of the appraisal provision of an insurance policy after a CRN has been filed tolls, as a matter of law, the sixty-day cure period of section 624.155(3)(d) until the appraisal process is concluded. If it does, then, under the timeline in this case, State Farm's final payment for the balance owed on the claim was paid within the sixty-day cure period. If not, then State Farm's payment was outside the "cure" period.

Our answer to the question is no. Simply put, there is no language contained in section 624.155 that invoking the appraisal process after a CRN is filed tolls the running of the sixty-day cure period. Notably, after the filing of the CRN and State Farm's initiation of the appraisal process in this case,

the Florida Legislature amended section 624.155 to add sub-section (3)(f) to specifically preclude a CRN from being filed within sixty days *after* the appraisal process is invoked by any party in a residential property insurance claim. Ch. 2019-108, § 6, Laws of Fla.[1] In our view, had the Legislature intended the invocation of the appraisal process to also toll the running of the statutory sixty-day cure period when, as here, the CRN had been filed *before* the appraisal process was initiated, it could have readily and easily done so. *See Zaleski v. State Farm Fla. Ins.*, 315 So. 3d 7, 14 (Fla. 4th DCA 2021) (Klingensmith, J., concurring) (recognizing that it is not the role of the court, by judicial fiat, to rewrite section 624.155(3)(f) to also toll the running of the CRN's sixty-day cure period if the appraisal process is instituted after the CRN is filed because if the statute is defective in this regard, "any correction of this possible statutory defect should come from the Legislature"). It is not within our authority to engraft this language into the statute.

As previously indicated, in entering summary judgment in favor of State Farm on the first ground, the trial court cited to the Florida Supreme Court's

---

[1] Furthermore, due to other changes made in the 2019 amendment to section 624.155, the provision creating the sixty-day cure period that was located in subsection (3)(d) of the 2018 version of the statute (which applies in the instant case) was moved to subsection (3)(c), where it is located in the present version of the statute. *See* Ch. 2019-108, § 6, Laws of Fla.

decision in *Talat Enterprises, Inc.* The court did not elaborate why it concluded that *Talat* supported summary judgment, but we find that its reliance was misplaced. In doing so, we agree with the observations of our sister court in *Zaleski* that *Talat* is not controlling here because the CRN in *Talat* was filed well after the appraisal award had been paid by the insurer in full; thus, the insured did not have a statutory bad faith claim because its claim had already been remedied. *See Zaleski*, 315 So. 3d at 11. Moreover, *Talat* did not address, at all, whether the statutory sixty-day cure period is tolled once the appraisal process is invoked. *Id.*

Accordingly, we find that the trial court erred in determining, as a matter of law, that the initiation of the appraisal process tolled the running of the sixty-day cure period and that payment of the appraisal award thereafter "cured" the alleged bad faith.

Turning to the trial court's second basis or ground for summary judgment in this case, the court wrote that section 624.155 requires that a CRN state, with specificity, the facts and circumstances giving rise to the statutory violations. The court essentially concluded that Apex's CRN did not comport with this statutory requirement, finding that it contained only "conclusory statements" without the requisite factual specificity. We apply the de novo standard of review to the question of whether the CRN was

7

facially deficient. *See Julien v. United Prop. & Cas. Ins.*, 311 So. 3d 875, 877 (Fla. 4th DCA 2021).

To assist our analysis, we turn to section 624.155(3)(b)1.–5., Florida Statutes (2018), which sets forth the information that must be included in a CRN. Solely at issue here is subsection (3)(b)2. of the statute, which requires that a CRN state, with specificity, the "facts and circumstances giving rise to the violation." The dispositive question before us on this second ground is whether, as a matter of law, Apex's CRN failed to comply with section 624.155(3)(b)2.'s requirement that the facts and circumstances giving rise to the violation be stated with specificity.

On this issue, we again find our sister court's opinion in *Zaleski* to be helpful. There, the trial court had granted summary judgment for the insurer, finding that the CRN filed in that case had not sufficiently specified the facts and circumstances of the violation. 314 So. 3d at 13.

The Fourth District Court reversed. It analyzed the allegations in the CRN that, among other things, the insurer (1) performed a cursory inspection, (2) gave a "lowball" estimate that failed to encompass all damages, (3) failed to retain the necessary experts to identify the repair work needed to restore the property to its pre-loss condition, and (4) had been provided a detailed estimate of the cost to repair; and it held that the CRN

8

had sufficiently placed the insurer on notice of the specific facts and circumstances giving rise to the violation. *Id.*

In the present case, while the facts and circumstances alleged by Apex in its CRN were not identical to those found in *Zaleski* to be compliant with section 624.155(3)(b)2., we find them to be sufficiently similar or analogous. Apex's CRN related that State Farm had, among other things, suggested numerous "half-cures" to resolving the damage claim, including pricing for labor and materials that was inconsistent with marketplace pricing, made "lowball" offers as a precursor to invoking the appraisal process in order to cause additional delay, and received an invoice from Apex that detailed the actual work performed, with a specific amount necessary to resolve the claim. We hold that these allegations sufficiently complied with the requirements of section 624.155(3)(b)2.

Accordingly, we reverse the final summary judgment entered in favor of State Farm and remand for further proceedings.[2]

REVERSED and REMANDED.

EDWARDS and HARRIS, JJ., concur.

---

[2] To be clear, while we have now reversed the final summary judgment, we take no position on the ultimate merit, if any, of Apex's bad faith claim.

9