# Supreme Court of Florida

No. SC2021-1580

**ALBERTA S. ELLISON,**
Petitioner,

vs.

**RANDY WILLOUGHBY,**
Respondent.

November 2, 2023

MUÑIZ, C.J.

This case presents a certified question about whether a personal injury damages award must be reduced by a payment the plaintiff received to settle a bad faith claim against his uninsured motorist insurance carrier.[1] *Ellison v. Willoughby*, 326 So. 3d 214 (Fla. 2d DCA 2021). Two of Florida's setoff laws are at issue, sections 768.041(2) and 768.76(1), Florida Statutes (2012).[2] The

---

1. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.

2. Throughout the period relevant to this case, the text of the statutes involved did not change. The parties and the Second District Court of Appeal have cited varying editions of the Florida

former appears in a statutory section titled "Release or covenant not to sue"; the latter in a section titled "Collateral sources of indemnity." We will discuss these statutes, and the ways they differ, in some detail later.

The basic facts are straightforward. Respondent/plaintiff Randy Willoughby was badly injured in a car crash. After the accident, he sued Petitioner/defendant Alberta Ellison, bringing a vicarious liability claim based on Ellison's co-ownership of the other car in the crash. Willoughby also sued his own uninsured motorist insurance carrier to recover policy benefits and for statutory bad faith damages.[3] Willoughby and his insurer settled before trial for $4 million. The subsequent trial against Ellison resulted in a $30 million jury verdict for Willoughby. Ellison then asked the trial

Statutes, and the issue appears not to be of any consequence. All statutory citations in this opinion will be to 2012, the year the accident occurred.

3. Section 624.155(1)(b)1. authorizes first-party bad faith actions. In such an action, "the insured is also the injured party who is to receive the benefits under the policy." *McLeod v. Cont'l Ins. Co.*, 591 So. 2d 621, 623 n.3 (Fla. 1992), *superseded by* ch. 92-318, § 79, Laws of Fla., *as recognized in Fridman v. Safeco Ins. Co. of Ill.*, 185 So. 3d 1214, 1221 (Fla. 2016).

court to set off the $4 million insurance settlement against the damages award, but the court denied the motion.

In the decision under review, the Second District Court of Appeal affirmed the denial of the setoff request. It also certified this two-part question as one of great public importance:

> Is a settlement payment made by an uninsured motorist insurer to settle a first-party bad faith claim subject to setoff under section 768.041(2) or a collateral source within the meaning of section 768.76?

*Ellison*, 326 So. 3d at 224. The court answered no to both parts of the question, holding that neither statute authorized a setoff in this case. The Second District explained that, writing on a blank slate, it would have found Ellison entitled to a setoff under section 768.041(2), but it decided that this Court's case law precluded that result. *Id.* at 219.

Based on the parties' arguments and our own review of the record, we have determined that Ellison did not ask the trial court for a setoff under section 768.041(2). That issue was therefore unavailable for appellate review; the Second District should not have ruled on it, and neither should we. So, without answering the

first part of the certified question, we quash the part of the district court's decision addressing section 768.041(2).

Next, we rephrase the second part of the certified question to state more precisely the issue presented to the trial court and passed on by the district court:

> Is a settlement payment made by an uninsured motorist insurer to settle a first-party bad faith claim a collateral source within the meaning of section 768.76(2)(a)2.?

We agree with the Second District that the answer to the rephrased certified question is no.[4]

## I.

As he did before the Second District, Willoughby argues that Ellison did not preserve the section 768.041(2) setoff issue for appellate review. We agree.

The test that governs here is well established: the party seeking appellate review must show that it raised in the tribunal of first instance the "specific legal ground upon which a claim is based." *See Aills v. Boemi*, 29 So. 3d 1105, 1109 (Fla. 2010)

---

4. Ellison asks that we also take up alleged trial court and district court errors outside the certified question. Consistent with this Court's typical practice, we decline to do so.

(quoting *Chamberlain v. State*, 881 So. 2d 1087, 1100 (Fla. 2004));
*see also* 2 Philip J. Padovano, *Fla. App. Prac.* § 8:1 (2023 ed.) ("A
legal argument must be raised initially in the lower tribunal by the
presentation of a specific motion or objection at the appropriate
stage of the proceeding.").  This is not a "magic words" test.
*Williams v. State*, 414 So. 2d 509, 512 (Fla. 1982).  But the
argument presented must be "sufficiently specific to inform the trial
judge" of the issue to be decided.  *Id.*  Appellate courts' faithful
enforcement of this preservation rule promotes accuracy, efficiency,
and fairness in adjudication.

The record below shows that, in the trial court, Ellison did not
seek a setoff under section 768.041(2); instead, she relied entirely
on section 768.76.  Ellison filed a pretrial "Motion to Determine
Collateral Source Set Off" "[p]ursuant to Florida Statutes Section
768.76."  Her posttrial legal memorandum supporting that motion
invoked only section 768.76.  And, at the posttrial hearing on the
setoff motion, Ellison told the court that the insurance settlement
"fits within the collateral source statute [i.e., section 768.76]"—
again making no argument about section 768.041(2).  Finally, the
trial court's order denying the setoff motion does not show that the

- 5 -

court understood itself to be ruling on a section 768.041(2)-based claim.

Whether a setoff is available under section 768.041(2) presents an issue distinct from the issue whether a setoff is available under section 768.76. Although both statutes govern the reduction of damage awards, comparing the text of each provision leaves no doubt that they are substantively different. Section 768.041(2) appears within a statutory section titled "Release or covenant not to sue." It says:

> At trial, if any defendant shows the court that the plaintiff, or any person lawfully on her or his behalf, has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.

This provision comes from chapter 57-395, section 2, Laws of Florida. A four-section law, chapter 57-395 was titled "AN ACT to permit the releasing of one tort-feasor without its effect being to release all tort-feasors, and providing for set-off in actions against other tort-feasors." *See also Atl. Coast Line R.R. Co. v. Boone*, 85

So. 2d 834 (Fla. 1956) (showing the legal background against which the Legislature enacted chapter 57-395).

Compare that with section 768.76(1), which appears in a statutory section titled "Collateral sources of indemnity." Section 768.76(1) says, in relevant part:

> In any action to which this part applies in which liability is admitted or is determined by the trier of fact and in which damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources; however, there shall be no reduction for collateral sources for which a subrogation or reimbursement right exists.

The next provision, section 768.76(2)(a), defines "collateral sources" in detail. Those definitions show that, broadly speaking, the "collateral sources" referred to in the statute are government benefits and insurance and insurance-like payments. Adopted in 1986, *see* chapter 86-160, section 55, Laws of Florida, section 768.76 embodies the Legislature's decision to cut back on the common law "collateral source rule." *See Paradis v. Thomas*, 150 So. 2d 457, 458 (Fla. 2d DCA 1963) (describing the collateral source rule as providing that "total or partial compensation for an injury

- 7 -

received by the injured party from a collateral source wholly independent of the wrongdoer will not operate to lessen the damages recoverable from the person causing the injury") (quoting 15 Am. Jur. *Damages* § 198 (1938)).

The Second District acknowledged that Ellison "never specifically cited section 768.041(2)" in the trial court, but it found the issue preserved for appellate review anyway. *Ellison*, 326 So. 3d at 219. The district court waved off Willoughby's preservation-based argument: "this issue was thoroughly litigated in the trial court, and both the parties and the trial court relied on case law analyzing setoff of [uninsured motorist] settlements under both sections 768.041(2) and 768.76(1)." *Id.* Ellison now echoes this position and adds that, in the trial court, she made clear her view that Florida law does not allow Willoughby to be compensated twice for the same damages.

We cannot agree that Ellison preserved the section 768.041(2) setoff issue for appellate review. A trial court called upon to apply sections 768.041(2) and 768.76 would quickly see that each statute presents distinct issues of interpretation. If Ellison wanted the trial court to consider a setoff under both statutes, she had the

obligation to present both issues to the trial court. Ellison did not do that—she relied entirely on section 768.76. And the Second District cited no authority, and we are aware of none, for the notion that the trial court's mere awareness of case law discussing section 768.041(2), without any accompanying argument, put that statute in play for preservation purposes.

Because the Second District should not have ruled on Ellison's section 768.041(2) claim, we quash the portion of the district court's decision addressing that statute. We do so without passing on the correctness of the district court's statement that the meaning of section 768.041(2) is "plain and unambiguous"—a conclusion that the court supported only by discussing section 768.041(2) in isolation from the rest of chapter 57-395. *See id.* at 219. Nor do we express a view on the district court's analysis of this Court's case law addressing section 768.041(2). *Id.* at 217 ("How can a trial court apply a statute meant to prevent plaintiff windfalls when higher court precedent authorizes double recovery in all but the 'perfect' case?").

We now consider the availability of a setoff under section 768.76. A preliminary point: although Willoughby sued his uninsured motorist insurance carrier both for the $10,000 limit allowed under his policy and for bad faith damages, his $4 million insurance settlement was undifferentiated (as to claims and categories of damages). Like the parties' briefing, our analysis here will focus on whether section 768.76 required setoff of any bad faith damages portion of the settlement, i.e., at least $3.99 million.[5]

Recall that, subject to certain exceptions, section 768.76(1) mandates damage award reductions for sums that the plaintiff has received from "collateral sources." Recall further that section 768.76(2)(a) defines "collateral sources" in detail. In her setoff request to the trial court, Ellison relied on the collateral source definition in section 768.76(2)(a)2. She maintained that

---

5. The Second District held that any portion of the settlement attributable to Willoughby's policy benefits is subject to subrogation and therefore excluded from setoff under the text of section 768.76(1). Ellison's briefing here does not challenge this aspect of the district court's analysis.

Willoughby's insurance settlement qualified as a payment by or pursuant to:

> automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by her or him or provided by others.

§ 768.76(2)(a)2. The trial court denied setoff.

The Second District affirmed that decision, concluding that the bad faith damages portion of the settlement agreement did not meet the definition of "collateral source" in section 768.76(2)(a)2. The district court reasoned that "[a]n extracontractual payment on a bad faith claim does not appear to meet this definition because it is not a payment of 'benefits.' " *Ellison*, 326 So. 3d at 222. The district court further observed that " '[b]enefits' in the automobile casualty insurance context traditionally means the amount an insurer must pay on account of an insured's injuries that fall within the scope and limits of coverage." *Id.*

Ellison now argues that the Second District's analysis is wrong, for two reasons.[6] She says that bad faith damages fit within

---

6. Ellison also asks us to conclude that the insurance settlement meets the "collateral source" definitions in sections

- 11 -

the term "benefits" because they would not be available absent an underlying insurance contract. Ellison also maintains that this Court should interpret the text of section 768.76 in a way that furthers the (asserted) statutory purpose of preventing plaintiffs from receiving windfalls consisting of a double recovery of (assertedly) the same damages.

We agree with the Second District that bad faith damages are not "benefits" for purposes of the collateral source definition in section 768.76(2)(a)2. First-party bad faith claims like Willoughby's are a creature of statute, not of the underlying insurance contract between the parties. In particular, the damages recoverable in an uninsured motorist insurance bad faith claim are set out in section 627.727(10): "the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state."

---

768.76(2)(a)3. and (2)(a)4. Ellison did not present those arguments to the trial court, and the Second District's decision does not address them. We will limit our analysis and decision to what was both argued and passed on below.

Our Court has characterized these statutory bad faith damages as "in substance, a penalty." *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 61 (Fla. 1995). We drew that conclusion because section 672.727(10) exposes insurers to liability for damages that they did not cause. *Id.* at 60-61. This Court also has said that statutory bad faith damages are "extracontractual." *Talat Enters., Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278 (Fla. 2000). By "extracontractual," we meant that first-party bad faith damages are over and above "the amount owed pursuant to the express terms and conditions of the policy after all of the conditions precedent of the insurance policy in respect to payment are fulfilled." *Id.* at 1283.

We do not think it would be reasonable to interpret the term "benefits" as encompassing a statutory penalty of this kind. Such a penalty does not fit within the ordinary meaning of the word "benefit." *See, e.g., Webster's Third New International Dictionary* 204 (1993 ed.) (defining "benefit" as "a cash payment or service provided for under an annuity, pension plan, or insurance policy"). Nor does the penalty square with the definitions of "benefit" found in insurance-focused dictionaries. *See, e.g.*, Harvey W. Rubin,

- 13 -

*Dictionary of Insurance Terms (Barron's Business Guides)* 52 (4th ed. 2000) ("monetary sum paid or payable to a recipient for which the insurance company has received the premiums"); Lewis E. Davids, *Dictionary of Insurance* 30 (2d ed. 1962) ("[s]um of money provided in an insurance policy to be paid for certain types of loss under the terms of an insurance policy").

Ellison's argument that we should "apply a definition that accomplishes the purpose of the statute," i.e., "to prevent windfalls to plaintiffs," is similarly unpersuasive. Statutory purpose, if it is knowable and capable of being defined with sufficient specificity, can be an important ingredient in statutory interpretation. But the goal of giving effect to a law's purpose cannot justify a reading that stretches the language of a statute beyond its breaking point.

## III.

To sum up: We decline to answer the first part of the certified question, because the defendant did not preserve the section 768.041(2) issue for appellate review. Our answer to the second part of the certified question, as rephrased at the beginning of this opinion, is no: a settlement payment made by an uninsured motorist insurer to settle a first-party bad faith claim is not a

collateral source under section 768.76(2)(a)2.  We quash the portion

of the Second District's decision addressing section 768.041(2).

And we approve the rest of the district court's decision to the extent

it is consistent with our decision here.

It is so ordered.

CANADY, LABARGA, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal
    Certified Great Public Importance/Direct Conflict of Decisions

    Second District – Case No. 2D19-1961

    (Hillsborough County)

Paul L. Nettleton and Jeffrey A. Cohen of Carlton Fields, Miami, Florida,

    for Petitioner

Brent G. Steinberg, Daniel L. Greene, and Jacob M. Schuster of Swope, Rodante P.A., Tampa, Florida,

    for Respondent

Patrick M. Chidnese and Frieda C. Lindroth of Bickford & Chidnese, LLP, Tampa, Florida; and Kansas R. Gooden of Boyd & Jenerette, PA, Miami, Florida,

    for Amicus Curiae Florida Defense Lawyers Association

- 15 -

Bryan S. Gowdy of Creed & Gowdy, P.A., Jacksonville, Florida, for Amicus Curiae Florida Justice Association