**TALAT ENTERPRISES, INC. d/b/a Billy the Kid's Buffet, Plaintiff,**

v.

**AETNA CASUALTY & SURETY CO. d/b/a Aetna Life & Casualty, Defendant.**

No. 95–760–CIV–ORL–22.

United States District Court, M.D. Florida, Orlando Division.

June 14, 1996.

---

Morton Kosto, Kosto & Rotella, P.A., Orlando, FL, William F. Merlin, Jr., William F. Merlin, Jr., P.A., Tampa, FL, for Talat Enterprises, Inc.

Philip Edward Beck, Smith, Currie & Hancock, Atlanta, GA, for Aetna Cas. and Surety Co.

### MEMORANDUM OF DECISION

GLAZEBROOK, United States Magistrate Judge.

**MOTION: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 25]
**FILED:** June 14, 1996
**DISPOSITION: GRANTED.**

## I. INTRODUCTION

On January 28, 1997, this Court heard oral argument on defendant Aetna Casualty & Surety Co.'s motion for summary judgment [Docket No. 25], memorandum [Docket No. 26], and statement of undisputed facts [Docket No. 27], and on plaintiff Talat Enterprises, Inc.'s memorandum in opposition [Docket No. 28]. Aetna's motion for summary judgment is **GRANTED**.

This case arises out of a fire on April 15, 1994 in the kitchen at Billy the Kid's Buffet, owned by Talat. At the time of the fire, Aetna insured Talat through a commercial fire policy. Talat argues that Aetna breached a covenant of good faith and fair dealing under the policy by failing to promptly negotiate and settle claims for fire-damaged business property and lost business income, by delaying payment of those claims without proper cause, and by withholding repair moneys. Amended Complaint, Docket No. 2 at 2–3 and 5, ¶¶ 9–10, 25–25. Talat's amended complaint seeks damages from Aetna pursuant to Fla.Stat.Ann. § 624.155(1)(b)(1), which provides a civil remedy against an insurance company that has not attempted to settle claims in good faith.[1]

---

1. At the hearing, Talat acknowledged that it claimed damages only under Fla.Stat.Ann.

Aetna seeks a summary determination that it is not liable to Talat for failure to attempt to settle in good faith. Aetna contends that, as a matter of law, Aetna paid the damages and corrected the circumstances giving rise to the alleged violation before the sixty-day period allowed by Fla.Stat.Ann. § 624.155(2)(d) had elapsed. Indeed, the parties do not seriously dispute that Aetna had paid Talat $331,930.97 ($119,007.47 for personal property plus $212,923 for business interruption), Docket No. 2 at 6, ¶¶ 28–29, before the sixty-day period even began.

## II. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593–94 (11th Cir.1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989); *Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

in deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*Jeffery v. Sarasota White Sox*, 64 F.3d 590, 594 (11th Cir.1995), quoting *WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir.1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–

§ 624.155, and not under the common law. In Florida, first-party bad faith cases are actionable only under the statute. *State Farm v. Laforet*, 658 So.2d 55, 58–59 (Fla.1995). Talat argued that it had claimed not only under Fla.Stat.Ann.

§ 624.155(1)(b)(1), but also under Fla.Stat.Ann. § 626.9541(1)(i) and § 624.155(1)(a)(1) pertaining to unfair for deceptive acts. The amended complaint, however, contains no such allegation. Docket No. 2.

52, 106 S.Ct. at 2511. On a summary judgment motion the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. *Id.*

■ Where a statute has clear and unambiguous wording, this Court will defer to that clear wording, and is not free to speculate on the repercussions. *Auto–Owners Insurance Co. v. Conquest*, 658 So.2d 928 (Fla. 1995) (relating to § 624.155). Also, the interpretation of an insurance contract is a question of law which may be determined on summary judgment. *Galen Health Care, Inc. v. American Company of Reading, Pennsylvania*, 913 F.Supp. 1525, 1528 (M.D.Fla.1996), *citing Cranford Ins. Co. v. Allwest Ins. Co.*, 645 F.Supp. 1440, 1441 (N.D.Cal.1986) and *Continental Casualty Co. v. City of Richmond*, 763 F.2d 1076, 1079 (9th Cir.1985).

## III. THE FLORIDA LAW ON GOOD FAITH SETTLEMENT

■ Under Florida law, any person may bring a civil action against an insurer when such person is damaged by the commission of the following act by the insurer:

> Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests;

Fla.Stat.Ann. § 624.155(1)(b)(1).[2] In determining whether an insurer has "acted fairly and honestly toward its insured and with due regard for his interests" the Supreme Court of Florida applies the "totality-of-the-circumstances" standard in § 624.155, and not a "fairly debatable" standard. *State Farm Mutual v. Laforet*, 658 So.2d 55, 62–63 (Fla. 1995) (requiring evaluation of insurer's promptness and diligence in resolving coverage dispute in a first-party cause of action),

receding from *Imhof v. Nationwide Mutual Ins. Co.*, 643 So.2d 617, 619 (Fla.1994) (dicta adopting "fairly debatable" standard).

As a condition precedent to bringing an action under § 624.155, and to perfect the right to sue under the statute, the claimant must give the Florida Department of Insurance and the insurer sixty days' written notice of the violation. Fla.Stat.Ann. § 624.155(2)(a)–(b). The statute specifies that **"No action shall lie if,** within 60 days after filing notice, **the damages are paid or the circumstances giving rise to the violation are corrected."** Fla.Stat.Ann. § 624.155(2)(d) (emphasis supplied).

Section 624.155 does not define either the term "damages are paid" or the term "circumstances giving rise to the violation are corrected." The Florida Legislature has not specified precisely what damages an insurer must pay before the sixty-day period expires in order to avoid a bad faith action. Aetna contends that the insurer need only pay the claim made on the policy. Talat, however, contends that the insurer must not only pay the claim, but must also pay all compensatory damages that flow from any delay in settling the claim. Talat stops short of claiming that the insurer must also pay punitive damages and attorney's fees within the sixty-day period. Although neither party points to legislative history to support their contention, the few Florida cases on point are more consistent with Aetna's reading of § 624.155(2)(d).

■ A first-party bad faith claimant cannot state a cause of action until he can allege that there has been a determination of the insured's damage, whether by litigation or arbitration. *Imhof*, 643 So.2d at 617; *Brookins v. Goodson*, 640 So.2d 110, 112 (4th DCA 1994). The arbitration award is a predicate or prerequisite to initiating a first-party failure to settle suit. The failure to settle cause of action does not accrue until after the conclusion of the underlying arbitration. *Brookins*, 640 So.2d at 113. One might fairly

---

**2.** The damages recoverable pursuant to § 624.155 include those damages which are a reasonably foreseeable result of a specified violation of § 624.155 by the insurer, and may in-

clude an award or judgment in an amount that exceeds the policy limits. Fla.Stat.Ann. § 624.155(7) (1990 amendment).

infer from language in *Brookins* that an insurer may escape liability for failure to attempt to settle in good faith by paying the policy limits before the sixty-day "window period" expires:

> The only way for an insurer to avoid an action being brought for statutory bad faith is set forth in section 624.155(2)(d) ... It follows that an insurer cannot escape liability for a violation of section 624.155 by the simple expedient of a belated payment of the policy limits after the 60 day time period provided in section 624.155(2)(a) has expired. The belated payment by the insurer neither automatically proves nor disproves first party bad faith. The insured must still establish that the insurer's failure to pay *the policy limits* by the expiration of the 60 day window period constituted bad faith as defined by statute.

*Brookins*, 640 So.2d at 122–13 (emphasis supplied).

Although less applicable to Talat's first-party claim against Aetna, the Florida courts have also discussed what an insurer may do to correct "the circumstances giving rise to the violation" in the third-party context. In *Clauss v. Fortune Insurance Co.*, 523 So.2d 1177, 1178 (5th DCA 1988), the Court found Fortune to be in compliance with § 624.155— and therefore not liable for bad faith failure to settle—where Fortune had tendered the limits of its automobile policy one day after service of the notice of the claim of bad faith. By timely tendering the policy limits, Fortune corrected "the circumstances giving rise to the violation," corrected any possible allegations of bad faith, and avoided liability for an excess judgment. 523 So.2d at 1179. Another court has required an insurer to tender more than its policy limits to gain § 624.155 protection where its refusal to settle with a third party exposed its insured to an excess judgment. *Hollar v. International Bankers*

*Ins. Co.*, 572 So.2d 937, 939–40 (3rd DCA 1990). Nevertheless, none of the cases support Talat's claim that the insurer has not corrected the circumstances giving rise to the violation unless it pays all bad faith damages.

## IV. THE FACTS

There is no genuine issue as to any material fact. On April 15, 1994, there was a fire at Billy the Kid's Buffet, a restaurant owned by Talat. After repairs, the restaurant reopened for dinner on either April 19, 1994 or April 20, 1994. At the same time, Aetna paid Talat $10,000.[3] On April 27, 1994, the Department of Health shut down the restaurant for about thirteen days for code violations. On June 9, 1994, Talat demanded an appraisal, and appointed Ron Livingstone & Associates as its public adjuster. On July 29, 1994, Livingstone submitted Talat's proof of loss for $141,704 for damage to personal property. On August 10, 1994, Livingstone submitted Talat's proof of loss for $291,111 for loss of business income.

On September 7, 1994, Talat filed for bankruptcy under Chapter 11 [Case No. 94–4638–BKC–6B1]. On October 21, 1994, Talat sued Aetna in Bankruptcy Court for business property and income loss, but did not join Talat's bad faith claim. *See* Fed.R.Civ.P. 18(a). On December 29, 1994, the Bankruptcy Court granted a motion to dismiss Talat's breach of contract suit, and required arbitration pursuant to the arbitration clause in the appraisal provision.

On February 3, 1995, the arbitrators returned an appraisal award in favor of Talat for $331,930.47—$119,007.47 for personal property and $212,923.00 for business interruption loss. On or about March 3, 1995, Aetna paid Talat $331,930.47—the total value of the appraisal award.[4] On March 15, 1995, Talat issued statutory notification of intent to

---

**3.** Aetna claims that it also paid Talat $10,000 on May 20, 1994, and again on June 15, 1994. Talat denies receiving the second and third $10,-000 payments. Talat does not seriously dispute that Aetna directly paid for the repairs at a later date.

**4.** Talat acknowledges that Aetna paid it in full in March of 1995, but is "unable to stipulate to

Defendant's contention that said payment was made on March 3, 1995." Docket No. 28 at 5. Yet, Talat points to no evidence which disputes the March 3, 1995 date and acknowledges that it has a "good faith belief that payment was made some time in the month of March." Docket No. 28 at 5.

pursue a bad faith claim against Aetna pursuant to Fla.Stat.Ann. § 624.155.[5] Sixty days after Talat's filing of the notice of its bad faith claim is May 16, 1995. No action lies if the "damages are paid" or "the circumstances giving rise to the violation are corrected" by May 16, 1995. *See* Fla.Stat. § 624.155(2)(d). On May 23, 1995, Talat filed suit in state court for breach of a covenant of good faith and fair dealing to promptly negotiate and settle Talat's claim. On July 24, 1995, Aetna removed the state action to the district court. On July 27, 1995, Talat converted its Chapter 11 bankruptcy case into a Chapter 7 liquidation.

## V. ANALYSIS

■  Aetna has timely paid "the damages" and has corrected "the circumstances giving rise to the violation" within the meaning of Fla.Stat.Ann. § 624.155(2)(d). As a matter of law, therefore, "no action shall lie" for not attempting in good faith to settle claims. First, Talat's cause of action for bad faith did not arise until February 3, 1995 when the arbitrators returned an appraisal award in favor of Talat for $331,930.47. Although § 624.155(2)(d) gave Aetna until May 16, 1995—sixty days after the filing of the statutory notice of the bad faith claim—to pay the damages or to otherwise correct the circumstances, Aetna paid Talat the full award on or about March 3, 1995.

■  The Court rejects as unsupported Talat's contention that the insurer must not only pay the claim within the sixty-day window, but must also pay all compensatory damages that flow from any delay in settling the claim. Section 624.155 does not impose on an insurer the obligation to pay whatever the insured demands.[6] The sixty-day window is designed to be a cure period that will encourage payment of the underlying claim, and avoid unnecessary bad faith litigation.

Surely an insurer need not immediately pay 100% of the damages claimed to flow from bad faith conduct in order to avoid the chance that the insured will succeed on a bad faith cause of action. If the insurer may avoid a bad faith action only by paying in advance every penny of the damages that it faces if it loses at trial, the insurer would have no reason to pay. Furthermore, few insureds would restrict their demands to compensatory damages. There is no reason why insureds would not demand also the advance payment of punitive damages and attorney's fees. Section 624.155(2)(d) would have no effect or purpose under such an interpretation. The law does not support such an expansive and illogical reading of Fla.Stat.Ann. § 624.155(2)(d).

Aetna's interpretation is sound. To cure an alleged violation and to avoid a civil action, an insurer must pay the claim (sometimes in excess of policy limits in the third-party context) before the sixty days expire. Aetna has done so, and Fla.Stat.Ann. § 624.155(2)(d) states that no action lies. Aetna is entitled to judgment as a matter of law.

## VI. CONCLUSION

Aetna's motion for summary judgment is **GRANTED.** The Clerk shall enter a judgment in favor of defendant Aetna that plaintiff Talat shall take nothing, and the action shall be dismissed.

___

5.  For the purposes of this motion, the Court assumes the correctness of the March 15 date. Talat claims that it sent the notice to Aetna on March 15, 1995, and that the Insurance Commissioner confirmed receipt of the notice on March 17, 1995. Docket No. 28 at 5.

6.  Although an insurer may have a good reason for not wanting to settle within the sixty-day period "for the amount demanded" in order to

avoid a bad faith suit, the insurer nevertheless must respond within sixty days. *Imhof v. Nationwide Mutual Ins. Co.,* 643 So.2d 617, 619 (Fla.1994). Aetna has done far more than just respond. It has paid the full claim of $331,-930.47, which included business interruption insurance for delays in repairs. Talat is not entitled to a double recovery.