# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

———————————————

CHAD FRISCO and MONIQUE FRISCO,

Appellants,

v.

STATE FARM FLORIDA INSURANCE COMPANY,

Appellee.

No. 2D2024-0464

———————————————

December 3, 2025

Appeal from the Circuit Court for Pasco County; Declan P. Mansfield, Judge.

Blair M. Fazzio and Jeffrey D. Groover of Kanner & Pintaluga, P.A., Boca Raton, for Appellants.

Paul L. Nettleton and Katarina Dobsinska of Carlton Fields, Miami, for Appellee.

VILLANTI, Judge.

Chad and Monique Frisco appeal the final summary judgment granted in favor of State Farm Florida Insurance Company in their bad faith lawsuit below. Because State Farm waived its defense upon which the trial court based its ruling, we reverse the final judgment and remand to the circuit court for further proceedings consistent with this opinion. Because we hold that the Friscos' waiver argument was

dispositive and necessitates reversal, we need not examine the remaining issues presented on appeal.

The Friscos own a home in Odessa that was insured by State Farm. In April 2018, they submitted a claim to State Farm for water intrusion damages that occurred after a contractor who was remodeling their home left the roof exposed. State Farm accepted the claim and authorized the Friscos to obtain the services of a mitigation company. The insurer also issued payment of $10,759.47 to the Friscos for property damage. Shortly after, State Farm advised the Friscos that there was "no coverage under the policy for poor workmanship or mold remediation" and that they should avoid taking any action that would hinder State Farm's subrogation claims against the contractors responsible for the water intrusion into the Friscos' home.

State Farm also advised the Friscos to hire a general contractor to prepare an estimate of repairs so that State Farm could adjust the claim. They complied with the directive, and in January 2019 they sent the "Exactimate" prepared by their contractor to their State Farm adjuster. The Friscos allege that State Farm never acknowledged the documentation—continuing its pattern of lack of meaningful communication—and essentially ceased further adjustment of the claim. When the Friscos learned that their original contractor had placed a lien upon their property, they reported the claim to State Farm and asked that the insurer defend them against the contractor's claims. State Farm declined to do so.

Frustrated by State Farm's lack of response, the Friscos filed a civil remedy notice (CRN) with the Department of Financial Services alleging that State Farm had acted in bad faith in handling their claim, thereby violating sections 624.155 and 626.9541, Florida Statutes (2019). The

2

Friscos alleged that State Farm delayed their claim, utilized unfair trade practices, failed to provide them with a certified copy of their policy, made an unsatisfactory settlement offer, and failed to defend them from a construction lien claim made by their contractor. In short order, the Friscos then filed a breach of contract lawsuit against State Farm.

State Farm responded by demanding an appraisal, arguing that the parties disputed the amount of damages but not coverage under the policy. The trial court ordered the appraisal, but it was not finalized until December 2019—a delay that was attributed, the Friscos allege, to State Farm's refusal to adhere to the court-imposed deadlines. State Farm paid to the Friscos the final payment toward its appraisal award amount of the damages covered under the dwelling portion of the policy in January 2020.[1]

Meanwhile, on March 22, 2019, against the backdrop of the breach of contract lawsuit, State Farm responded through its counsel to the CRN. State Farm's counsel wrote that the insurer "specifically denie[d] [the Friscos'] allegations" and that State Farm had acted in good faith and in accordance with its statutory duties. The correspondence did not mention any perceived issue or deficiency with the CRN itself or the Friscos' demand for attorney's fees and costs contained within the CRN.

In August 2020, the Friscos filed their bad faith lawsuit against State Farm, which is the underlying lawsuit here. State Farm did not file a timely answer following the parties' agreed order for an extension of time to do so but instead moved for dismissal of the complaint or alternatively, summary judgment. In its accompanying memorandum of law, State Farm alleged for the first time that the CRN was deficient

---

[1] The appraisal award totaled $80,707.81.

3

because it was not specific enough to provide State Farm with the opportunity to cure its alleged violations. State Farm also argued that the Friscos provided only "conclusory allegations" of the insurer's alleged violations. The Friscos responded to the summary judgment motion that State Farm had waived any argument to the legal sufficiency of the CRN by not raising it before. The trial court denied State Farm's motion to dismiss or for summary judgment and ordered State Farm to file its answer to the complaint. Notably, State Farm argued that the Friscos' CRN did "not provide the requisite specificity as to the facts and circumstances giving rise to the alleged violations" and "[a]s such, the CRN was legally insufficient to carry out the purpose of the notice and cure provisions of [section 624.155]." But still, no mention was made of the Friscos' demand for attorney's fees and costs.

It was not until two years later, in its renewed motion for summary judgment, that State Farm argued for the first time that the CRN was legally deficient because it demanded as a cure "extra-contractual damages" in the form of attorney's fees and costs. State Farm based its argument on the Florida Supreme Court's holding in *Talat Enterprises, Inc. v. Aetna Casualty & Surety Co.*, 753 So. 2d 1278 (Fla. 2000).

After a hearing on the motion, the trial court granted summary judgment in favor of State Farm, concluding that the CRN was "legally deficient" because it "impermissibly required State Farm to pay extra-contractual damages, such as attorney's fees and costs," contrary to *Talat*. According to the trial court, to require payment of these damages outside an insured's policy to "cure" alleged violations would render illogical results because "[section 624.155] cannot reasonably be construed to require payment of extra-contractual damages to avoid bad-faith litigation." This appeal followed.

4

## Analysis

We review the final summary judgment in favor of State Farm de novo because it is based upon a pure question of law: the trial court's interpretation of section 624.155. *See Major League Baseball v. Morsani,* 790 So. 2d 1071, 1074 (Fla. 2000); *see also Ellsworth v. State*, 89 So. 3d 1076, 1077 n.1 (Fla. 2d DCA 2012) ("Judicial interpretation of [a] statute is a pure question of law and we must therefore use a de novo standard of review.").

Section 624.155(1)(b)(1), Florida Statutes (2024), provides a civil remedy for an insurer's bad faith and provides as follows:

> (1) Any person may bring a civil action against an insurer when such person is damaged:
>
> . . . .
>
> (b) By the commission of any of the following acts by the insurer:
>
> 1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests . . . .

As a condition precedent to filing a bad faith lawsuit, an insured must file a CRN, which places the insurer and the Department of Financial Services on notice of an insurer's alleged violations. § 624.155(3)(a); *see also Fortune v. First Protective Ins.*, 302 So. 3d 485, 489 (Fla. 2d DCA 2020) (discussing the statutory prerequisites to filing a bad faith claim against an insurer).

The filing of the CRN triggers a sixty-day cure period in which the insurer may pay damages to the insured or otherwise correct the alleged violations. § 624.155(3)(c); *see Harper v. GEICO Gen. Ins.*, 272 So. 3d

5

448, 452 (Fla. 2d DCA 2019) ("[B]ecause GEICO did not pay Harper's claim within sixty days of the date the CRN was electronically filed with the Department, it did not pay the claim within the sixty-day cure period, and Harper was entitled to pursue her action for GEICO's alleged bad faith.").

However, "seeking an appraisal is not a cure to a failure to attempt to timely settle a claim in good faith." *Fortune*, 302 So. 3d at 490. This court has recognized that an insurer's payment of an appraisal award does not automatically alleviate the insurer of its potential liability for bad faith. *See Williams v. State Farm Fla. Ins.*, 346 So. 3d 79, 81 (Fla. 2d DCA 2022); *Fortune*, 402 So. 3d at 491; *see also Zaleski v. State Farm Fla. Ins.*, 315 So. 3d 7,13 (Fla. 4th DCA 2021). Further, an insured is not required to wait for a determination of liability or damages via the appraisal process to file a CRN, "[n]or is the insurer's appropriate response to that notice depend[e]nt on such a determination." *Fortune*, 302 So. 3d at 489 (second alteration in original) (quoting *Vest v. Travelers Ins.*, 753 So. 2d 1270, 1275 (Fla. 2000)). Rather, "[a]n insurer . . . must evaluate an insured's claim based upon proof of loss required by the policy and its expertise." *Vest*, 753 So. 2d at 1275-76. The insurer must "act reasonably and in good faith in evaluating the claim." *Williams*, 346 So. 3d at 81. Accordingly, "the focus in a bad faith case is not whether the insurer ultimately paid the amounts due under the policy, but whether it acted reasonably in evaluating the claim prior to the determination of damages." *Id.* (quoting *Zaleski*, 315 So. 3d at 12). The insurer's statutory duty to act in good faith is distinct from its contractual duties to its insured, which are dictated by the terms of the policy. *Id.* at 82.

6

In this case, the trial court agreed with State Farm's argument that the Friscos' demand for attorney's fees and costs were "extra-contractual"—outside of the terms of the insurance policy—and therefore State Farm was placed in the position of having to cure a violation it was not required to perform in the first place. The trial court relied upon *Talat* in ruling in State Farm's favor.

In *Talat,* the Florida Supreme Court accepted the Eleventh Circuit's certified question of whether an insurer which pays all contractual damages under a policy upon service of a CRN within sixty days but does not pay extracontractual damages has cured "the circumstances giving rise to [a] violation" as contemplated by section 624.155(2)(d). *Talat,* 753 So. 2d at 1280. Reasoning that "[s]ection 624.155 does not impose on an insurer the obligation to pay whatever the insured demands," the court answered the question in the affirmative. *Id.* at 1284.

Aetna's insured Talat, a company that owned and operated a restaurant, had sustained fire damage. *Id.* at 1279. Aetna paid its insured approximately $10,000 for damage to the property, and shortly after reopening, the restaurant was shut down by the health department for code violations stemming from the fire, resulting in significant business interruption. *Id.* Talat submitted proofs of loss establishing approximately $140,000 in personal property loss and approximately $290,000 in business interruption. *Id.* at 1280. Following court-ordered arbitration, Talat was awarded more than $331,000 in damages, and Aetna paid the sum to Talat within a few weeks of the arbitration. *Id.* Shortly after, Talat filed its notice of civil remedy and intent to file a bad faith lawsuit against the insurer. *Id.* Aetna moved for summary judgment on the grounds that it was entitled to judgment as a matter of

law because it had paid the entire arbitration amount due to Talat before the expiration of the sixty-day cure period. *Id.*

The court reasoned that "[i]n the context of a first-party insurance claim, the contractual amount due the insured is the amount owed pursuant to the express terms . . . of the policy after all of the conditions precedent . . . are fulfilled" and that "section 624.155(2)(d) . . . cannot reasonably be construed to require payment of extra-contractual damages to avoid bad-faith litigation." *Id.* at 1283.

In this case, in addition to finding *Talat* controlling, the trial court found that State Farm had not waived its argument that the Friscos' CRN was legally deficient for demanding extracontractual damages because section 624.155 should be strictly construed, and to find that State Farm waived its argument would "improperly shift the burden under the statute from the claimant to the insurer."

We do not agree with the burden-shifting rationale, and we conclude that State Farm waived its right to argue the Friscos' allegedly deficient CRN by failing to raise it in its response or any other time before arguing its motion for summary judgment, more than four years after the Friscos filed the CRN. It is well-settled that "an insurer that responds to the merits of an insured's CRN without raising defects in the notice waives the right to make any such objection later." *Vachon v. Travelers Home & Marine Ins.*, 403 So. 3d 451, 453 (Fla. 2d DCA 2025) (citing *Neal v. GEICO Gen. Ins.*, 358 So. 3d 749, 753 (Fla. 4th DCA 2023)); *see Bailey v. People's Trust Ins.*, 392 So. 3d 123, 125 (Fla. 4th DCA 2024); *see Bay v. United Servs. Auto. Ass'n*, 305 So. 3d 294, 299 (Fla. 4th DCA 2020). This is a logical extension from the also long-established principle that "one can waive any contractual, statutory or constitutional right . . . includ[ing] prelitigation notice requirements—a party can engage in

8

conduct that either waives the inadequacy of a notice or estops it from raising the inadequacy later." *Vachon*, 403 So. 3d at 453 (quoting *Bay*, 305 So. 3d at 299); *see Ingersoll v. Hoffman*, 589 So. 2d 223, 224 (Fla. 1991) (holding that dentist who did not specifically deny patient's performance of condition precedent presuit statutory notice waived the right to use that as a defense to malpractice claim). As with the insurer in *Vachon*, State Farm "responded to the merits" of the Friscos' CRN and "made no complaint" about the inclusion of the Friscos' demand for attorney's fees and costs. It thus waived its right to that argument. *See id.* at 453-54.

Because State Farm waived its argument on the issue upon which the trial court granted summary judgment—State Farm's waiver—we remand to the trial court for further proceedings consistent with this opinion. We decline to address the additional issues raised on appeal.

Reversed and remanded.

LAROSE, J., Concurs.
ATKINSON, J., Concurs in result only.

ATKINSON, Judge, Concurring in result only.

The Friscos have not challenged on appeal the trial court's conclusion that because they did not plead their waiver theory in reply to State Farm's defense, they were not permitted to argue the issue of waiver at summary judgment. Thus, this court should not reach the question of whether State Farm waived the defense upon which it sought summary judgment. However, reversal is still warranted because State Farm's defense fails on the merits and neither of its tipsy coachman

9

arguments support an affirmance. Consequently, I respectfully concur in result only.

## I.

State Farm defended the Friscos' bad faith insurance lawsuit in part on the basis that they failed to comply with a condition precedent. State Farm alleged that the Friscos' civil remedy notice was "deficient, inadequate and insufficient as a matter of law" because it "failed to specify" the alleged bad faith violations, the policy provisions allegedly breached, and "the alleged contractual damages owed." When State Farm later filed the motion for summary judgment that precipitated this appeal, State Farm argued that the Friscos' civil remedy notice was "legally deficient" for the discrete reason that "it impermissibly demanded State Farm pay unrecoverable extra-contractual damages, such as attorney's fees and costs." In their response to State Farm's motion for summary judgment, the Friscos countered in relevant part that State Farm waived the right to challenge the sufficiency of their civil remedy notice because State Farm failed to raise any defects with the notice in its response to the notice. The trial court granted summary judgment in favor of State Farm.

Consistent with the Friscos' argument on appeal, the majority concludes reversal is warranted "[b]ecause State Farm waived its defense upon which the trial court based its ruling." But the majority does not address the trial court's alternative ground for its ruling—which was raised by State Farm in its answer brief—that because the Friscos did not file a reply to State Farm's affirmative defenses, they were precluded from arguing at summary judgment that State Farm waived its defense regarding the sufficiency of the Friscos' civil remedy notice. "If an answer . . . contains an affirmative defense and the opposing party seeks to avoid

10

it, the opposing party must file a reply containing the avoidance."  Fla. R. Civ. P. 1.100(a).  "An avoidance is an allegation of additional facts intended to overcome an affirmative defense."  *Buss Aluminum Prods., Inc. v. Crown Window Co.*, 651 So. 2d 694, 695 (Fla. 2d DCA 1995) (citing *Kitchen v. Kitchen*, 404 So. 2d 203 (Fla. 2d DCA 1981)).  In other words, a reply is needed when a plaintiff seeks to "prove an affirmative defense to an affirmative defense."  *Reno v. Adventist Health Sys./Sunbelt, Inc.*, 516 So. 2d 63, 64-65 (Fla. 2d DCA 1987) (citing *Williams v. Irick*, 433 So. 2d 681 (Fla. 5th DCA 1983)).

State Farm argues, and the trial court agreed, that because the Friscos sought to avoid State Farm's affirmative defense concerning the sufficiency of the civil remedy notice by establishing that State Farm's conduct amounted to a waiver of the defense, the Friscos were required to plead waiver in reply.  *See Universal Prop. & Cas. Ins. v. Yager*, 413 So. 3d 786, 790–92 (Fla. 4th DCA 2025) (reversing trial court's partial summary judgment, which determined that the insurer "waived its lack of 'prompt notice' defense," because the insureds failed to timely reply to plead the issue of waiver); *Gamero v. Foremost Ins.*, 208 So. 3d 1195, 1196–97 (Fla. 3d DCA 2017) (concluding that the insured was precluded from arguing that the insurer "waived its right to rely on the marring exclusion" because the insured "failed to reply to, or avoid, this affirmative defense by alleging, as he does in this appeal, that the affirmative defense was waived by [the insurer's] conduct"); *cf.* Fla. R. Civ. P. 1.110(d) ("In pleading to a preceding pleading, a party must set forth affirmatively: . . . waiver, and any other matter constituting an avoidance or affirmative defense.").

However, this result would only obtain in the event that State Farm had *pleaded* the affirmative defense that it now claims could be avoided

11

only by means of the Friscos filing a reply. State Farm did plead an affirmative defense that the Friscos failed to comply with a condition precedent because their civil remedy notice was deficient on several grounds—but not on the grounds on which the trial court ultimately granted summary judgment. State Farm waited until filing its summary judgment motion to assert the affirmative defense that the civil remedy notice was deficient *because it demanded extracontractual damages*. Therefore, with respect to the affirmative defense upon which State Farm sought summary judgment, there was nothing for the Friscos to avoid in a reply to the answer—and there was no way for the Friscos to waive their right to argue that avoidance at the summary judgment stage of the litigation when, for the first time, State Farm asserted the affirmative defense upon which it prevailed. In short, the Friscos should not have been faulted for failing to reply to an affirmative defense that State Farm did not plead.

Thus, the Friscos are correct, albeit for different reasons,[2] when they argue in their initial brief that "the trial court erred in finding any sort of waiver by the Friscos." However, the Friscos neglected to raise as an issue on appeal the trial court's conclusion that their failure to avoid the affirmative defense of waiver in a reply foreclosed their opposition to State Farm's affirmative defense based on the insufficient civil remedy notice. Further, the Friscos did not present any argument on appeal in

---

[2] The Friscos argue on appeal that they could have amended their complaint to address the waiver argument as an avoidance to State Farm's affirmative defense. But to avoid an affirmative defense, the rules of civil procedure mandate a reply. *See* Fla. R. Civ. P. 1.100(a) ("If an answer . . . contains an affirmative defense and the opposing party seeks to avoid it, the opposing party *must* file a reply containing the avoidance." (emphasis added)).

12

reply to State Farm's appellate argument regarding their failure to file a reply in the trial court.  Therefore, because the Friscos have not presented the specific argument on appeal that the trial court was wrong because no reply was necessary given State Farm's lack of pleading the civil remedy notice defense, the party presentation principle arguably prevents this court from considering such an argument.  *See Williams v. State*, No. 5D2024-2334, 2025 WL 2092230, at *2 (Fla. 5th DCA July 25, 2025) ("The principle provides that 'the scope and content of the judicial controversy are to be defined by the parties or, conversely, that the court is restricted to a consideration of what the parties have put before it.' " (first quoting Robert Wyness Millar, *The Formative Principles of Civil Procedure* 11 (Northwestern Univ. Press 1923); and then citing *Trappman v. State*, 384 So. 3d 742, 751 n.4 (Fla. 2024))); *see also D.H. v. Adept Cmty. Servs., Inc.*, 271 So. 3d 870, 888 (Fla. 2018) (Canady, J., dissenting) (contending that the party presentation principle requires "an argument to specifically be raised," otherwise "the appellee 'must not only respond to the specific reasons for reversal advanced by the [appellant] but also anticipate and respond to other reasons for reversal that may be advanced by the reviewing court' " (alteration in original) (quoting *I.R.C. v. State*, 968 So. 2d 583, 588 (Fla. 2d DCA 2007))).

However, we need not resolve this party presentation question because the trial court's grant of summary judgment was incorrect for another reason that was adequately raised by the Friscos on appeal: the precise civil remedy notice deficiency on which summary judgment was premised is not supported by the language of the statute or any binding decisional authority.  In other words, the civil remedy notice was not deficient for the reason the trial court concluded it was.  On the merits, the trial court was wrong to conclude that the Friscos' civil remedy notice

13

was "legally deficient" on the basis that it required payment of "unrecoverable extra-contractual damages, such as attorney's fees and costs."

Section 624.155 specifies the form and content of an insured's civil remedy notice. The notice must be "on a form provided by the department." § 624.155(3)(b), Fla. Stat. (2019). And it must "state with specificity" (1) "[t]he statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated"; (2) "[t]he facts and circumstances giving rise to the violation"; (3) "[t]he name of any individual involved in the violation"; (4) the "specific policy language that is relevant to the violation, if any"; (5) "that the notice is given in order to perfect the right to pursue the civil remedy authorized by" section 624.155; and (6) "such other information as the department may require." *Id.* If the insured has given the insurer at least sixty days' notice and stated with specificity these enumerated items, then the insured has complied with his or her "condition precedent to bringing an action under" section 624.155. *See* § 624.155(3)(a).

Specificity being explicitly required by the language of the statute, *see* § 624.155(3)(b) ("The notice . . . shall state with specificity the following information . . . ."), the failure to meet that standard has been recognized as a deficiency that renders the notice inadequate to satisfy the condition precedent required to entitle a plaintiff to bring a bad faith action against an insurer. *See Demase v. State Farm Fla. Ins.*, 351 So. 3d 136, 138–39 (Fla. 5th DCA 2022) (concluding that the insured's civil remedy notice "was legally insufficient" because it "did not comply with section 624.155's specificity requirements"); *Julien v. United Prop. & Cas. Ins.*, 311 So. 3d 875, 879 (Fla. 4th DCA 2021) ("[W]e conclude the circuit court correctly determined that Julien failed to satisfy the requirement

14

that the insured identify the specific statute and specific policy provision relevant to Universal Property's alleged violation."). However, research has not revealed any controlling case law supporting the proposition that the nonmeritoriousness of what the insured demands in a civil remedy notice to cure an alleged bad faith violation, whether extracontractual damages or otherwise, renders the notice deficient. Nor does the statutory language support such a proposition. As quoted above, the statute requires an insured to "state with specificity" various types of information. § 624.155(3)(b). While this "notice of the violation" is a "condition precedent to bringing an action," § 624.155(3)(a), the statute cannot be read to conclude that the condition precedent is unfulfilled if the allegations supporting the asserted violation are determined to be unsupported by statute or policy language.

Thus, by invalidating the Friscos' civil remedy notice as "legally deficient" on the basis that it demanded "unrecoverable extra-contractual damages," the trial court put the cart before the horse. The merits of an insured's bad faith claim—that is, whether the allegations do or do not constitute bad faith under the statute or whether damages are or are not owed to the insured under the policy—have no bearing on whether the insured has satisfied his or her condition precedent to notify the insurer of the alleged bad faith claim. The statutory condition precedent is to notify the insurer with specificity of what the alleged bad faith violation *is*. The fact that an insured states facts that may not ultimately constitute a violation of the bad faith statute or demands damages that may not ultimately be recoverable does not alter the fact that the insured has sent a statutorily compliant civil remedy notice. At the notice stage, the civil remedy statute imposes no requirement that the insured state a *meritorious* bad faith claim or even allege a legally sufficient one. To the

15

contrary, it is only logical to presume that some insureds will notify insurers of bad faith claims upon which they will not ultimately prevail—whether because the underlying facts do not constitute bad faith or because certain demands are not available remedies under any appliable statutory or contractual provisions. Whether bad faith claims are legally sufficient or meritorious is a determination for the litigation stage.

The trial court relied on *Talat Enterprises, Inc. v. Aetna Casualty & Surety Co.*, 753 So. 2d 1278 (Fla. 2000), to support its conclusion that a civil remedy notice is "legally deficient" if it demands "unrecoverable extra-contractual damages." The supreme court in *Talat* held that an insurer who, upon receipt of a civil remedy notice, timely pays all contractual damages, but does not pay any extracontractual damages that were demanded in the notice, has nevertheless paid "the damages" or corrected "the circumstances giving rise to the violation" as described in section 624.155 such that it can cure an alleged bad faith violation and avoid litigation. *See id.* at 1280–81; *see also* § 624.155(3)(d) ("No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected."). In other words, the supreme court concluded that only "the contractual amount due" is what the insurer must pay within the sixty-day window to cure the alleged bad faith violation, regardless of whether an insured included in its notice a demand over and above that amount. *See Talat*, 753 So. 2d at 1283. But that conclusion in no way supports what the trial court concluded in this case—that a civil remedy notice is "legally deficient" if it demands "unrecoverable extra-contractual damages." The supreme court only spoke to what *the insurer* must do to cure an alleged bad faith violation, not what *the insured* must do to notify the insurer of an alleged bad faith violation and satisfy the condition precedent in section

16

624.155(3). Indeed, the supreme court said nothing whatsoever about the validity of a civil remedy notice or what content the civil remedy notice must or must not contain.

Moreover, in holding that an insurer only has to pay the contractual damages to cure an alleged bad faith violation, the supreme court approved the analysis of a federal magistrate judge that "[s]ection 624.155 does not impose on an insurer the obligation to pay whatever the insured demands." *Id.* at 1282 (quoting *Talat Enters., Inc. v. Aetna Cas. & Sur. Co.*, 952 F. Supp. 773, 778 (M.D. Fla. 1996)). In other words, no matter what the insured demands, the insurer only has to pay the contractual damages in order to cure the alleged bad faith violation. The supreme court's rationale in *Talat* does not support—and in fact undermines—the trial court's conclusion in this case because the rationale presupposed the validity of the insured's civil remedy notice. If the mere inclusion of a demand for "extra-contractual damages" in the civil remedy notice rendered it invalid, then there would have been no reason for the court to answer the question it did in *Talat*. In other words, it is nigh impossible to read the rationale of the *Talat* opinion without concluding that the court presumed that the civil remedy notice was statutorily sufficient despite the inclusion of extracontractual damages because the court presumed the insurer would be required to respond to it, the only question being *what* the response would be required to include as opposed to *whether* a response would be required at all. *Cf. id.* at 1283 ("Section 624.155(1)(b), Florida Statutes (1993), then, is correctly read to authorize a civil remedy for extra contractual damages if a first-party insurer does not pay the contractual amount due the insured after all the policy conditions have been fulfilled within sixty days after a valid notice has been filed under section 624.155(2)(a),

17

Florida Statutes (1993)."). The supreme court answered a question concerning the validity of the insurer's response to a civil remedy notice that demanded extracontractual damages, not the validity of the civil remedy notice itself.

Thus, statutory language and the Florida Supreme Court's analysis in *Talat* compel the conclusion that a determination of whether an insured has satisfied the condition precedent described in section 624.155(3) is not contingent on the insured's contractual entitlement to the demands contained in a civil remedy notice. Accordingly, I would conclude—contrary to the trial court—that State Farm's defense asserting the invalidity of the Friscos' civil remedy notice because it demanded extracontractual damages fails as a matter of law.

## II.

State Farm raises two tipsy coachman arguments for affirmance, however. *See Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record."). State Farm argues that the Friscos' civil remedy notice was also legally deficient for failing to comply with the specificity requirements in section 624.155 because the Friscos failed to allege with specificity the facts and circumstances giving rise to the alleged bad faith violations and failed to reference the relevant policy language. *See* § 624.155(3)(b)2, (3)(b)4. Though State Farm did not raise these issues in the motion for summary judgment that precipitated the trial court's summary judgment on appeal, State Farm previously raised these issues in an alternative motion to dismiss or motion for summary judgment, which the trial court denied. Thus, these issues were raised

18

and considered below and, consequently, the record is sufficiently developed to review them.[3]

[3] Decisions from the First, Third, and Fifth District Courts of Appeal have concluded that the tipsy coachman doctrine does not apply to grounds not raised in the motion for summary judgment. *See, e.g.,* *Seaside Town Council, Inc. v. Seaside Cmty. Dev. Corp.*, 347 So. 3d 89, 97 (Fla. 1st DCA 2021); *Sousa v. Zuni Transp., Inc.*, 286 So. 3d 820, 822 (Fla. 3d DCA 2019); *Trainor v. PNC Bank, Nat'l Ass'n*, 211 So. 3d 366, 368 (Fla. 5th DCA 2017). Citing to a decision of the Third District for support, at least one opinion issued by this court has ostensibly adopted that proposition and relied upon it to conclude that the court would not "decide . . . for the first time on appeal" an issue that had not been raised "below or on appeal." *See Fredrick v. Dolgencorp*, LLC, 304 So. 3d 36, 39 (Fla. 2d DCA 2020) (citing *Sousa*, 286 So. 3d at 822)). The apparent history of the proposition indicates that it originated in *Agudo, Pineiro & Kates, P.A. v. Harbert Constr. Co.*, 476 So. 2d 1311, 1315 n.3 (Fla. 3d DCA 1985), in which the Third District reasoned that "as *Loranger v. State, Department of Transportation*, 448 So. 2d 1036, 1039 (Fla. 4th DCA 1983) makes clear, the 'right for the wrong reason' appellate maxim does not apply in summary judgment proceedings where the issue was never raised in the motion for summary judgment." However, the Third District's decision and the authority upon which it relied seem at odds with a later-decided opinion of the Florida Supreme Court. *See Radio Station WQBA*, 731 So. 2d at 644. Referring to an argument not included in the appellee's summary judgment motion but rather asserted for the first time in a posttrial motion, the supreme court opined that a trial court's judgment "will be upheld if there is any basis which would support the judgment in the record" and "that the appellee can present any argument supported by the record *even if not expressly asserted in the lower court*." *Id.* at 645 (emphasis added) ("[A]n appellee need not raise and preserve alternative grounds for the lower court's judgment in order to assert them in defense when the appellant attacks the judgment on appeal." (citing *MacNeill v. O'Neal*, 238 So. 2d 614, 615 (Fla. 1970)); *see also Seaside Town Council*, 347 So. 3d at 104 n.6 (Fla. 1st DCA 2021) (Tanenbaum, J., dissenting) ("The majority is of the view that the principle cannot apply here because SCDC did not raise justiciability in its motion filed with the trial court. This misses the mark. The supreme court has rejected the view that the alternative theory must have been asserted in the trial court (in essence, preserved) for the right-result-but-wrong-reasoning principle to apply on appeal." (citing *Radio Station*

State Farm's argument that the civil remedy notice lacked specificity as to the facts and circumstances giving rise to the alleged bad faith violations lacks merit. The notice provides a detailed account of the Friscos' interactions with State Farm and how and why the Friscos contend State Farm's conduct amounts to bad faith. However, a different deficiency noted by State Farm in its other argument is accurate—as far as it goes. State Farm points out that the Friscos failed to refer to the specific policy language relevant to the alleged bad faith violations. The Friscos did indeed omit reference to specific policy language, although this was a fraught topic given State Farm's alleged failure to timely provide a copy of the policy upon the Friscos' statutory request. *See* § 627.4137(1), Fla. Stat. (2018) (requiring an insurer to provide certain

---

*WQBA*, 731 So. 2d at 644–45)). While an issue not raised in a motion for summary judgment might not allow for application of the tipsy coachman doctrine if it is not otherwise "supported by the record," *see id.* at 644, the categorical prohibition against applying the doctrine to grounds not raised in the motion for summary judgment is inconsistent with the supreme court's discussion of the tipsy coachman doctrine in *Radio Station WQBA*. Moreover, any analytical justification for such a categorical rule is not adequately elaborated by any of the recorded opinions that advance it, and the rule is not logically consonant with the tipsy coachman doctrine itself. The supreme court did not carve out summary judgment as an exception to the tipsy coachman rule, and it expressly authorized appellees to assert tipsy coachman grounds even if not asserted in the trial court, the only relevant inquiry being whether the record supports the alternative ground argued for affirmance. In this case, for example, although the asserted tipsy coachman grounds were not raised in the motion for summary judgment that precipitated this appeal, they were raised in a prior motion for summary judgment and developed in the record. And, as to both motions, the Friscos' civil remedy notice was before the trial court, even if the specific argument raised for its invalidity was different. For these reasons, the record is adequate to review those issues on their merits to determine whether they support an affirmance.

information within thirty days of a written request, including a "copy of the policy"). Thus, State Farm is correct that the Friscos failed to satisfy the explicit, plainly worded, statutory requirement to make "[r]efer[ence] to specific policy language that is relevant to the violation, if any." § 624.155(3)(b)4. And the Friscos do not refute State Farm's assertion that it eventually did provide a copy of the policy. The Friscos even represented in their civil remedy notice that they might supplement the notice upon receipt of the policy—but they never did. So the civil remedy notice was statutorily deficient in that regard because it did not include a reference to any specific policy language.

However, that deficiency only applies to *relevant* policy language. *See id.* (providing that the notice must include a "[r]eference to specific policy language that is *relevant* to the violation, *if any*" (emphasis added)). Thus, the deficiency would only foreclose bad faith claims to which relevant policy language was absent. As the statutory language indicates with the phrase "if any," not every bad faith claim will be premised on policy language. Indeed, some of the Friscos' bad faith theories are premised on violations to which no specific policy language is relevant and which therefore would not require an examination of policy language in order to assess the merits of the claim—as one example, State Farm's alleged failure "to acknowledge and act promptly upon communications with respect to claims." On the other hand, the failure to refer to relevant policy language was a deficiency as to some of the Friscos' other claims. Their civil remedy notice manifestly indicated that there *was* relevant policy language. The Friscos' notice twice asserted that State Farm's conduct violated the insurance policy—in the first instance that State Farm "failed to comply with the Loss Payment provision and others" and in the second instance that State Farm's

21

conduct was "in violation of the Loss Settlement provision of the policy." But section 624.155 requires the insured to "state with specificity" the "specific policy *language* that is relevant to the violation," not to refer to an entire *provision* of the policy that is relevant to the violation. *See id.* (emphasis added). Thus, the Friscos' generic reference to the "Loss Payment provision" and "Loss Settlement provision" does not comply with the specificity requirements of the statute.

As to the relevant policy *language,* the Friscos' notice also asserted that they were "[u]nable to provide specific policy language as State Farm ha[d] failed to produce a certified copy of the policy based on a request for same pursuant to Fla. Stat. 627.4137, dated November 19, 2018." The record indicates that State Farm did not provide a copy of the policy until February 6, 2019, which was after the Friscos filed their civil remedy notice on January 24, 2019, and well after the thirty-day deadline provided in section 627.4137. *See* § 627.4137(1).[4] While State Farm's tardy response cannot be condoned, it did not obviate the Friscos' express statutory obligation to "state with specificity" the "specific policy language that is relevant to the violation." § 624.155(3)(b)4; *see also Sanders v. City of Orlando*, 997 So. 2d 1089, 1095 (Fla. 2008) ("The word 'shall' is mandatory in nature." (citing *Fla. Bar. v. Trazenfeld*, 833 So. 2d

---

[4] State Farm argues that section 627.4137 does not apply in this case because it "applies only to liability coverage, not first party property coverages." Even if State Farm is correct, State Farm treated the statute as applicable when it responded in writing and "disclosed" the policy and other information "[p]ursuant to [the Friscos'] request for information under Florida Statute 627.4137." And the point remains that although the Friscos asked State Farm for a copy of their policy and State Farm took over sixty days to provide it, the delay does not excuse the Friscos' failure to satisfy the express statutory requirement to include any policy language relevant to their claims in the civil remedy notice.

734, 738 (Fla. 2002)); *cf.* § 627.421(1) ("Subject to the insurer's requirement as to payment of premium, every policy shall be mailed, delivered, or electronically transmitted to the insured or to the person entitled thereto not later than 60 days after the effectuation of coverage.").  Additionally, the statute expressly excepts *third party* claimants from stating the relevant policy language if the insurer has not provided a copy of the policy.  *See* § 624.155(3)(b)4 ("If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.").  The statutory language's explicit qualification of the exception as applying to third party claimants indicates that the exception does not apply to other classes of persons, such as first party claimants like the Friscos.  *See Gabriji, LLC v. Hollywood E., LLC*, 304 So. 3d 346, 351 (Fla. 4th DCA 2020) (" 'Under the principle of statutory construction, *expressio unius est exclusio alterius*,' also known as the negative-implication canon, 'the mention of one thing implies the exclusion of another.' " (quoting *Brown v. State*, 263 So. 3d 48, 51 (Fla. 4th DCA 2018))); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) ("The doctrine properly applies only when . . . the thing specified . . . can be reasonably thought to be an expression of *all* that shares in the grant or prohibition involved.").  To conclude otherwise would require the court to expand the statutory exception to apply beyond the circumstances authorized by the legislature.  *Cf. N.W. v. State*, 767 So. 2d 446, 450 (Fla. 2000) ("In section 39.054(1) the legislature made it abundantly clear that it knows how to impose time restrictions upon dispositions of juveniles who have been adjudicated delinquent.  Had the Florida Legislature intended the same

23

time limitations to apply in cases when adjudication is withheld, it would and could have easily incorporated direct language to that effect."); *Vetter v. Dep't of Bus. & Pro. Reg., Elec. Contractors' Licensing Bd.*, 920 So. 2d 44, 48 (Fla. 2d DCA 2005) ("When the legislature wishes to disqualify certain persons from exercising a right or a duty, it knows how.").

Research has revealed no Florida appellate opinions that address whether the failure to include policy language that is relevant to a bad faith claim renders the civil remedy notice deficient as to other bad faith claims included in the notice but to which no policy language is relevant. The statute qualifies the requirement to refer to policy language, acknowledging by the phrase "if any" that some bad faith claims may not rely on policy language. It stands to reason that an insured cannot be foreclosed from bringing a bad faith claim to which no policy language is relevant even though the insured failed to refer to policy language relevant to *another* bad faith claim. While the latter claim might be barred, the former would not. Barring the former based on failure to cite policy language that has no relevance would defy logic and confound practical application of the statutory civil remedy notice provision under such circumstances. I therefore cannot conclude that State Farm's tipsy coachman argument supports an affirmance. However, on remand for further proceedings, the insurer should be permitted to seek summary judgment as to those claims for which any relevant policy language was omitted from the civil remedy notice based on the failure of the condition precedent mandated under the statute.

_____

Opinion subject to revision prior to official publication.